## Case No. 3,987.

DONNELL et al. v. COLUMBIAN INS. CO.

[2 Sumn. 366.][2]

Circuit Court, D. Massachusetts. May Term, 1836.

EXCEPTIONS TO MASTER'S REPORTS — PRACTICE—MARINE INSURANCE—PRESUMPTION OF SEAWORTHINESS—CONSTRUCTION OF POLICY — COMMERCIAL USAGES—STATE DECISIONS.

1. A party should require the master, or auditor, to report specially such evidence, as furnishes the ground of any exception. And the court will not open the facts of the report, unless to correct some unquestionable error.

[Cited in Greene v. Bishop, Case No. 5,763; Hart v. Shaw. Id. 6,155; Welling v. La Bau, 34 Fed. 42; Tilghman v. Proctor, 125 U. S. 150, 8 Sup. Ct. Rep. 901.]

2. There is no rule or presumption of law, which makes the seaworthiness of a vessel at the commencement of the voyage prima facie evidence, that the subsequent repairs, necessary to be made during the voyage, arose from some extraordinary peril. Otherwise, the underwriters might be made liable for losses for mere wear and tear.

[Cited in Higgins v. Moore, 34 N. Y. 422.]

3. The necessity of repairs, in the course of the voyage, on account of mere wear and tear, does not impair the original warranty of seaworthiness.

4. Where a verdict was taken against the defendants by consent, subject to the report of auditors, in order to ascertain the amount of the loss suffered by the plaintiffs, held, that the defendants, by this course, only admitted, that the plaintiffs had some cause of action, and did not preclude themselves from any inquiry into the cause and nature of the loss, and the amount, which was attributable to the perils insured against.

5. A payment of money into court admits the contract and damages only pro tanto; and,

---

[1] [Not previously reported.]
[2] [Reported by Charles Sumner, Esq.]

if the plaintiff does not establish more at the trial, he must be nonsuited, or have a verdict against him.

6. In a policy of insurance, it was stipulated, that the underwriters shall not be liable "for any partial loss of other goods, or on the vessel and freight, unless it amount to five per cent. exclusive in each case of all charges and expenses incurred for the purpose of ascertaining and proving the loss;" *Held*, that the words "in each case," in the foregoing clause, do not mean "at each time of loss," but that they refer to the three several subjects insured, goods, freight, and vessel, and require a damage of five per cent. to justify a claim in each case.

[Cited in Airey v. Merrill, Case No. 115.]

7. Successive losses on the cargo, in the course of the voyage, each less than five per cent. but in the aggregate amounting to more than five per cent., are not within the exception, and are to be borne by the underwriters.

8. Semble, that the same rule prevails with regard to losses on the ship.

9. Semble, that this rule prevails among the commercial states of the continent of Europe.

10. Usages among merchants should be sparingly adopted as rules of law by courts of justice, as they are often founded in mere mistake, and in a want of comprehensive views of the full bearing of principles.

[Cited in Palmer v. Warren Ins. Co., Case No. 10,698; Citizens' Bank v. Nantucket Steamboat Co., Id. 2,730; The Sydney, 27 Fed. 127.]

11. Semble, that in questions of commercial law, the courts of the United States are not concluded by the local construction proceeding from the state courts.

12. Quaere — If a distinction exists between successive losses by the same peril in the same voyage, and successive losses by different perils in the same voyage.

Assumpsit on a policy of insurance, dated on the 23d of June, 1828, whereby the plaintiffs [John S. Donnell and others] caused themselves to be insured, lost, or not lost, "$4,500 on the ship United States, and $10,-500 on property on board said ship, valued at 5 per cent. above the costs and charges, per invoice, at all periods of the voyage, at and from Baltimore, to, at, and from all ports and places, in any order of succession, one or more times to the same, between Valparaiso and Guayaquil, both inclusive; at and from thence to port or ports in Manilla and Java, and at and from thence to port of discharge in Europe or the United States, either, but not both, with liberty to stop on her passages for advice, trade and refreshment; risk to commence May 9, 1818, at noon. In case the United States returns from the Pacific to Baltimore, the risk to be covered by the policy;" at a premium of 5 per cent. per annum, to add one per cent. if said ship should be north of the straits of Dover between the first of November and the first day of March. Ship valued at $15,000, not including premium. The policy, after enumerating the usual risks, contained the following, among other provisos; "Provided, that the assurers shall not be liable for any partial loss on sugar, &c., unless the loss amount to 7 per cent.; nor for any partial loss on salt, &c.; or other goods, which are esteemed perishable in their own nature, unless it amount to 7 per cent. on the average value of such articles, and happen by stranding; nor for any partial loss on other goods, or on the vessel or freight, unless it amounts to 5 per cent. exclusive in each case of all charges and expenses incurred for the purpose of ascertaining and proving the loss; but the owners of such goods shall recover on a general average." The declaration alleged, that in the course of the voyage insured, and while the ship, with her cargo (of coffee) on board, was proceeding from Batavia to Antwerp, she was greatly injured by stormy and tempestuous weather, &c., and was compelled to put away for the Isle of France, where she arrived; that the cargo was wetted and damaged by the storm, and the plaintiffs put to great expense in saving and unlading the cargo, and repairing the ship; and part of the cargo was spoiled; that the ship, after she was repaired, sailed, with the residue of the cargo, for Antwerp, and on the 15th of December, 1829, was, by the force of the winds and waves, and ice and currents, driven on certain shoals in the river Scheldt, and was thereby greatly injured, and the cargo greatly wetted and damaged, &c. At the trial on the general issue, a verdict was, by consent, taken for the plaintiffs, for the sum of —— dollars, subject to the opinion of the court upon the report of auditors appointed by the court. The auditors made a special report, in which they disallowed certain charges, ranked by them, as class fifth of charges for repairs on the ship, viz. materials for the deck, stanchions, rails, wales, &c., and labor incident thereto. The following extract from their report, in relation to these items, will elucidate the opinion of the court. "The evidence in relation to this class of charges is very imperfect. If the admission or proof of seaworthiness establishes every part of the vessel to be sound at every stage of the voyage, injury by perils insured against excepted, then the fact, that the stanchions and rails were broken, and the deck planks and side planks near the wale needed replacing or repairing, might of itself be considered to be evidence of some extraordinary peril, for which the underwriters are answerable. But if the establishment or admission of the seaworthiness of the ship, at the commencement of the voyage, still leaves open the inquiry, whether particular repairs in the course of the voyage were rendered necessary by the perils insured against, or by decay or by defects, or by wear and tear, as the auditors suppose to be the case, then the establishing of the fact of the necessity of the repairs does not, as the auditors suppose, throw upon the underwriters the burthen of proving that the necessity for the repairs arose from some other cause than the perils insured against; but on the contrary, they presume, that the assured must show, by some further evidence than the

mere fact of the necessity of the repairs, that they were rendered necessary by the damage occasioned by the perils insured against. In regard to the present class of charges, the auditors do not find any evidence in the log-book or deposition of the master. or other documents, that these repairs were of damage occasioned by perils of the seas, other than the evidence, if any, arising from the kind of injuries or defects, which required repairs. Had the vessel been new, the mere fact of these repairs being needed, might itself have been sufficient ground of inference, that a peril within the policy was the cause. But considering, that she was eighteen years old; that neither the log-book, nor the captain's deposition state that these parts of the vessel were damaged in consequence of a storm or by perils of the sea, nor state any fact from which such cause of damage can be inferred; and considering, that holes were picked in the waterways by the carpenter, before going into Mauritius, showing, as the auditors suppose, the defective or decayed state of the part of the vessel in which some part of these repairs were made, and considering also the apprehension of the men in regard to going on in the vessel, the auditors conclude, that this class of charges is not shown to have been incurred in consequence of the operation of any peril within the policy."

And now, at this term, the case was argued upon certain exceptions taken to that report.

Benjamin R. Curtis and Mr. Fletcher, for plaintiffs.

Mr. Hubbard, for insurance company.

STORY. Circuit Justice.    No question is now before the court, as to any loss on the ship, as far as it is allowed by the auditors, or as to any general average, both of these having been admitted or adjusted between the parties. But the auditors have disallowed certain charges, enumerated in their report, as class fifth of charges for repairs on the ship, viz. materials for deck. outside, stanchions, rails, wales, &c., and labor incident thereto. Upon these items the auditors, in their report, made the following remarks. (Here the judge repeated them.) Now, in this view of the matter, the counsel for the plaintiffs object to this part of the report, upon two grounds: First, that the auditors have drawn a wrong conclusion, in point of fact, from the evidence submitted to them on these charges; secondly, that, in point of law, the seaworthiness of the vessel at the commencement of the voyage is prima facie evidence, that all subsequent repairs, necessary to be made during the voyage, did arise from some extraordinary peril; and, therefore, the auditors were bound so to consider it, at least in the absence of all contradictory and controlling evidence. Unless these items of charges are allowed. there is no loss exceeding 5 per cent. on the ship; and hence

arises the importance of considering them in the cause.

As to the first point, it is not now properly before this court upon the report. The auditors have not reported, what the evidence was before them upon this matter; nor did the plaintiffs require them to report it specially, as they ought to have done, if they meant to bring the conclusion of the auditors under the review of the court. The report of the auditors is in the nature of a report of a master in a suit in chancery; and, when exceptions are to be taken to the latter. the evidence, which furnishes the ground of the exceptions should be required, by the party excepting, to be stated by the master; for otherwise the court will not wander at large into the evidence in order to ascertain, whether, by possibility, the master was wrong in his conclusion or not. Still, however, as this is a mere mistake in practice, if the court were now satisfied, that the auditors had committed a gross and palpable error in any matter of fact to the injury of the plaintiffs, I should feel it a duty to recommit the report, in order that such an error might be corrected. But if it be a matter of fair doubt, or a conclusion upon evidence in its own nature ambiguous and uncertain, upon which different persons. equally impartial and intelligent, might entertain different opinions; there the court will not substitute itself for the judgment of the auditors, any more than it would for the judgment of a jury, even though it might not perhaps have originally arrived at exactly the same conclusion. It is sufficient for the court to abstain from any interference, as to a matter of fact, that it is not clearly satisfied, that there has been an unquestionable error. My opinion is, in the present case, that there is no such error.

Then, as to the point of law. I agree, that the verdict admits the seaworthiness of the ship for the voyage from Batavia to Antwerp. But, in my judgment. it furnishes no sufficient ground to say, that all repairs, which may incidentally become necessary or proper in the course of the voyage. are therefore to be attributed to the extraordinary perils insured against. It is clear, that the underwriters are never liable for losses occasioned by the mere wear and tear of a ship during a voyage. Unless it can be established, that no losses by mere wear and tear can occur during a voyage, which it may be necessary or proper to repair, consistently with the warranty of seaworthiness, there is an end of the argument. I know of no such presumption of evidence, and no such principle of law. On the contrary, I have always supposed, that there may be many small repairs, necessary and proper in the course of a voyage, from mere wear and tear, the existence of which would not impair the warranty of seaworthiness. Suppose some of the timbers of a ship are decayed. and yet not to such a degree as to destroy her seaworthi-

ness; and repairs should be necessary in that part of the ship from any extraordinary peril, without absolutely requiring that timber to be removed; it might be matter of great propriety, and in a general sense necessary and proper, to take out such timber; and yet the underwriters might not be liable for the loss. As I understand the law, the underwriters are not liable for any repairs or losses on a ship, not properly occasioned by, or attributable to some peril insured against. The mere fact, that repairs are made by a master in the course of a voyage, in the exercise of his discretion (which discretion is always confided to him to some extent by law), can furnish of itself no proof, that those repairs were indispensable, and far less, that they were required by some extraordinary peril. Such repairs must often be made in the exercise of a sound discretion, and with a prudent view to the interests of the owner. In every case, in which the assured seeks to recover for such repairs against the underwriters, he must show, not only that they were proper and necessary, but that they became so from the extraordinary perils of the voyage within the policy. The loss is like every other loss within the policy. The onus probandi is on the assured to establish it by competent and satisfactory proofs, before he is entitled to recover it. It appears to me, therefore, that the auditors were, under these circumstances, perfectly correct in their view of the law.

But it is said, that the defendants have precluded themselves from any inquiry of this sort, by consenting to take a verdict against them; for that admits, that the plaintiffs have sustained some loss; and if so, then the only thing for the auditors to do, was to ascertain the amount of the loss, not to ascertain the cause of the loss; for the verdict admitted that. The case has been likened to the case of payment of money into court upon a policy, which not only admits the loss, but the cause of the loss as stated in the declaration; and for this the case of Waldron v. Coombe, 3 Taunt. 162, has been relied on.

It appears to me, that the argument is not maintainable, either upon principle or upon authority. By consenting to take a verdict against them, subject to the report of auditors, the defendants have done no more than admit, that the plaintiffs had some cause of action against them, and had sustained some loss or damage within the perils of the policy. The quantum of that loss or damage is precisely what the auditors were appointed to ascertain, as substitutes for the jury. The latter, upon the trial, would have been bound to find, not only that there was some loss, but the nature and extent of that loss. If the defendants had admitted, before the jury, that the plaintiffs were entitled to recover some loss or damage, the inquiry would still have remained, what loss, and what damage; and that could be ascer-

tained only by ascertaining the loss and damage properly attributable to the perils of the sea. The very same duty has now devolved upon the auditors. They are to ascertain, not what loss or damage has been sustained by the plaintiffs, but what loss or damage by the perils within the policy, and for which the underwriters are properly answerable. By referring the amount to the judgment of the auditors, it could never be supposed, that the defendants intended to make themselves liable for losses or damages not within the scope of the policy.

As to the case of Waldron v. Coombe, 3 Taunt. 162, it turned upon other considerations, and does not in any manner touch this doctrine. It is admitted, that payment of money into court admits, that the plaintiff has a good cause of action to that amount upon the peril specified in the declaration. Thus, for example, the payment of 50 per cent. into court upon a declaration on a policy, alleging a loss by perils of the seas, admits a loss by such perils to that amount; but not beyond it. The argument in Waldron v. Coombe was not, that the plaintiff, without proof, could recover beyond the 50 per cent. paid into court; for proof was offered of that. But the argument for the defendant was, that the plaintiff "had not, in fact, even proved, that there had been a storm or an hour's foul weather during the voyage." Now, the declaration averred a loss by perils of the seas. And Lord Chief Justice Mansfield said, in answer to the argument, "The payment of money into court admits the storm." He did not say, that the payment admits all the loss claimed to have been by storms. And Lawrence and Heath, Justices, added, with reference to the evidence; "No facts are laid before the court, from which we can infer, that the defendant could put himself in a better situation, if he had the advantage of a new trial." So that the court did not touch the point now in judgment; but the verdict was confirmed upon other grounds. Nothing, indeed, is better settled than the rule, that payment of money into court admits the contract and damages only pro tanto; and if the plaintiff does not establish more at the trial, he must be nonsuited, or have a verdict against him. Rucker v. Palsgrave, 1 Taunt. 419; Gutteridge v. Smith, 2 H. Bl. 374. The case of Rucker v. Palsgrave, 1 Taunt. 419, is a direct authority to this very point of payment of money into court for a loss upon a policy. My judgment is, therefore, with the auditors on this point; and this disposes of the partial loss on the ship; for, under these circumstances, it does not amount to 5 per cent.

We come, in the next place, to the consideration of the real and difficult question in the cause; and that is, whether, under the exception in this policy, the plaintiffs are entitled to recover for two partial losses occurring to the cargo at two different points of the return voyage, each less than 5 per cent.,

but in the aggregate amounting to more than 5 per cent. The language of the policy is, that the underwriters shall not be liable "for any partial loss on other goods, or on the vessel, or freight, unless it amount to 5 per cent., exclusive, in each case, of all charges and expenses incurred for the purpose of ascertaining and proving the loss." In the argument at the bar, some criticism has been employed to establish, that the words "in each case," in the clause, mean "at each time of loss," but, in my judgment, entirely without success. These words, in their true and proper meaning, apply to goods, vessel and freight, and require 5 per cent. damage to justify a claim in each case, that is, in case of an insurance on goods, on vessel, and on freight. If all three are insured in one policy, a loss of 5 per cent. on the cargo will not authorize a recovery for a loss on vessel, or on freight, unless the loss on them be also 5 per cent. What then is the true interpretation of this clause? Does it mean, that each single loss accruing at one and the same time, and, as it were uno flatu, should amount to 5 per cent., or only that all the aggregate losses on the subject-matter during the voyage should amount to that sum? If I had been called upon to give a construction to this clause, wholly independent of authority or usage, I confess, that the strong inclination of my mind is, that I should hold it to apply to an aggregate of losses during the whole voyage, and not to a loss of 5 per cent. at any one time, or by any one continuous peril. My reason is, that the general words of the policy apply to all losses, during the voyage, from the perils insured against. The exception is, of all losses not amounting to 5 per cent., which (it seems to me) naturally means all losses during the voyage, not all losses at a particular time, or on a particular occasion in the course of the voyage. The exception is carved out of a general liability for all losses. It is an exception of the same nature as the general liability; and it saves the party from all such losses, if they do not amount to 5 per cent. There are no qualifying phrases, as to the time, or manner, or occasion of the loss; and I do not well see, upon what grounds a court can add to, or qualify the words. The general words make the underwriters liable for all losses, however numerous, in the voyage; not for each separately, as an independent loss; but for all in the aggregate. The exception (as I think) excepts all losses ejusdem generis below 5 per cent., that is, not amounting in the aggregate to 5 per cent. If the exception meant to cover a particular class of losses, different from those included in the general words in any respect, it would have been natural. that some qualification should have accompanied them. The absence of such a qualification negatives any intention to make it. I agree, that the intention of the exception was, to guard the underwriters against trifling losses occurring in the voyage, which should be borne by the assured, as coming within the common meaning of wear and tear. But I think, also, that it was the very basis of the exception, that the aggregate of losses, not exceeding 5 per cent. in the whole voyage, were fairly attributable to mere wear and tear. But if the other view of the exception is to prevail, the assured might in a long voyage, as for instance, to India, meet with losses from four or five successive storms, each of which might be less than 5 per cent. damage; but the aggregate of which might amount to nearly 20 per cent. It appears to me incredible, that a succession of losses of this sort should not be intended to be covered by the risks of the policy. A ship, valued at $20,000, might, in a succession of gales, be stripped of most of her sails, and even lose her masts, and yet no one gale might have done damage equal to $2000, while the aggregate might be $5000 or $6000. But the case does not stand unaffected by usage and authority; and therefore, it is necessary to consider the question with reference to both. As to the usage in this state, there is no evidence before the court; and the statements at the bar are of opposite characters, leading to the conclusion, that there is no uniform and well established usage in our mercantile community. And, if there were, I am among those judges, who think usages among merchants should be very sparingly adopted, as rules of law, by courts of justice, as they are often founded in mere mistake, and still more often in the want of enlarged and comprehensive views, of the full bearing of principles. The usage in England, or rather, as it should be stated, at Lloyd's in London, is, as we are informed by Stevens and Benecke, to construe the words of the memorandum in English policies, "And all other goods, also the ship, and freight, are warranted free of average under three per cent., &c.," to mean, three per cent. by one accident or at one time (see Stev. Av. p. 401; Benecke, Av., Phil. Ed., Boston, 1833, p. 426); though it is by them, in terms, exclusively applied to averages on the ship. We shall presently see, how little that usage has been adhered to in the English courts of justice.

In the case of Brooks v. Oriental Ins. Co., 7 Pick. 259, which was an insurance on ship, with the usual exception of any partial loss, unless it should amount to five per cent., the supreme court of Massachusetts held, that the meaning was, that there must be five per cent. damage from disasters happening at one time, or in one continued gale or storm, considered by itself. And the court seem to have founded themselves mainly in this decision on the English practice, as stated by Stevens in his work on Average. Now, although questions of commercial law are generally considered, as not justly included in that branch of local law, which the courts of the United States are bound to administer, as the state courts hold it to be; yet, such is my respect for the learning and ability of

that court, and my anxiety to follow the current of decisions upon commercial questions (as to which Lord Mansfield's remark is well founded, that it is less important, how they are settled, than that they should be settled), I should implicitly have adopted this doctrine on the present occasion, if it had been applicable to it. But my distress is, that the court in that case expressly save the very point now in judgment; or rather, lead us to the conclusion, that this construction of the exception applies to the ship only, and not to the cargo. The court said: "But it may be otherwise in regard to the cargo; because the actual damage received at different times cannot be ascertained during the passage, or when it happens; but only when the cargo is unladed." Now, the reason, thus given for the distinction does not seem to me entirely satisfactory; nor can I well see, how the same words are to receive an entirely different construction, as to the different subject-matters of insurance, stated in the exception. The language is, that the underwriters are not to be liable, "for any partial loss on other goods, or on the vessel, or freight, unless it amount to five per cent." The loss then, must be five per cent. on the ship, five per cent. on the freight, five per cent. on the cargo. How it is to be ascertained; when it must occur; and whether at one time, or in the whole voyage; is not stated in the one case, any more than in the other. The difficulty of establishing in proof the nature or extent of the loss at any one time has nothing to do with the rule of construction of the words of the instrument. The question is not, how the loss is to be established in either case; but whether it does in fact amount to five per cent. If, indeed, the intrinsic difficulty of ascertaining the damage at any one time to the cargo be a sufficient ground in point of general convenience, to repel the construction above stated, as to the cargo, it should repel it also, as to the ship and freight; for the words apply with the same force. and in the same connection to each. Besides; it is often quite as difficult to ascertain the damage done at any one time to the ship, as to the cargo. The injury to the ship, done by a succession of gales, is often impracticable to be ascertained at sea, and, especially where there has been great straining, until after she has been overhauled in port. And where the direct damage done to a ship in a single gale is visible, and afterwards in other gales other injuries occur to the same things, or in the same places, it is, practically speaking, extremely difficult to ascertain the precise amount of the mischief done at any one time. Yet the injury may be of such a nature, as clearly to establish, that it is not mere wear and tear; and to avoid the latter, is what the learned court thought was the true object and foundation of the exception. With the greatest deference, therefore. to the learned court, I confess, that the reason assigned for the distinc-

tion rather leads me to doubt, whether the construction ought to have been adopted in regard to the ship. The rule, it seems to me, ought to work throughout, or not at all. Its inconvenience and difficulty, in application to the cargo are admitted; nay seem insuperable. Why, then, if not intended to be applied to the cargo, should we presume an intention to apply it to the ship, when in many cases the same inconvenience and difficulty would apply to the ship?

Mr. Phillips, in his excellent treatise on insurance (volume 1, c. 18, pp. 493, 494, lays it down as clear, that in practice, the doctrine is not applied to the cargo; but that successive losses in the voyage may be added to make the five per cent. His language is: "The amount of damage upon goods is usually ascertained at the port of delivery; and no distinction can ordinarily be made in regard to the damage occasioned at different periods. If the whole damage exceeds the rate per cent. of the exception, the insurers are considered to be liable. It would, in general, be impracticable to distinguish damage to goods by the same peril, as perils by the seas, for instance, at different times." I agree to this reasoning; and it seems to me, in general. equally applicable to the ship. No one will pretend in regard to the ship, that if the degree of damage. done at any time to the ship, can be ascertained, one rule shall prevail; and if it cannot be, that a different rule shall prevail as to the ship. That would be, to make the rule depend upon the proof, and not the proof upon the rule. It would be to make the underwriters liable for successive losses on the ship during the voyage, where you could not ascertain the precise amount each time, or in each gale; and not liable, where each admitted of a distinct valuation, though the aggregate of the latter might be treble the former. Mr. Phillips, also, states a distinction between successive losses by the same peril in the same voyage, and successive losses by different perils in the same voyage. With that distinction, I do not now intermeddle; for it is not before the court. All I can say is, that it is not pointed at by the words of the exception, however reasonable it may be. But the question as to the ship has recently undergone a solemn adjudication in England. I allude to the case of Blackett v. Royal Exchange Assur. Co., 2 Cromp. & J. 244, where the court of exchequer held, that, under the usual words of the memorandum in English policies, "free from average under three per cent.," successive losses on the ship, at different periods of the voyage might be added, to make up the amount. Lord Lyndhurst, in delivering the opinion of the court, put the case upon a general ground in the exposition of all instruments, and very properly applied to policies, that words of exception in an instrument are to be taken (if doubtful) most strongly against the party. for whose benefit they are introduced (Earl of Cardigan v. Amitage, 2 Barn.

& C. 197, 206; Shep. Touch. 100; Bullen v. Denning, 5 Barn. & C. 847, 850, 851; Lofield's Case, 10 Coke, 107b); and, according to that rule, held the underwriters liable. Now, this is a case, in its reasoning directly applicable to the present. The case (it is true) was that of the ship; but a fortiori the same consid-erations must, upon the grounds already sug-gested, apply to the cargo. I should have been glad, indeed, to have found the doctrine established upon some broader ground than that of a mere technical rule of construction, satisfactory in itself, but still in my judg-ment, sustained by more enlarged considera-tions. It has been intimated, that the clause in our policies differs from that in the English policies. In form it does; in substance it is the same, as to all the purposes of this excep-tion. A similar clause exists in foreign poli-cies, and especially in policies in France. I have been induced, on this account, to exam-ing the writings of the maritime jurists of that country, to see, if a different rule pre-vails there. I cannot find, that it does. The point does not indeed seem ever to have been directly made. But this very silence, in a case of such common occurrence, is of itself expressive. Valin, Pothier, and Emerigon (2 Emerig. Assur. c. 12, § 44, note 4, p. 3; Poth. Assur. note 165; 2 Valin, Comm. B. 3. tit. 6, art. 47, p. 113; Poth. Assur. note 162) all use language, which leads to the conclusion, that the exception does not apply to succes-sive losses to the stipulated amount, occur-ring at different periods of the voyage; but that the underwriters would be liable there-for; for they do not distinguish between cases of a single average, and cases of several av-erages in the voyage. The only practical point, which they discuss approaching near this, is, whether in case of an exception of losses, not exceeding three per cent. (or any other rate), if the loss in the voyage exceeds that sum, whether the whole loss is to be paid, or only the difference after deducting the three per cent. They agree, that the whole must be paid, for the reason given by Pothier, that the words, not exceeding three per cent., express only the condition, on which the underwriters are to pay the aver-ages, (les avaries) or the case, in which they ought to be held liable. If there had been an exception, as to losses at different periods of the voyage, it would have been natural for us to have found it here stated. The modern Commercial Code of France (article 408) pro-vides, in exact conformity to the 47th article of the Ordinance of Louis XIV. on the same subject (2 Valin, Comm. liv. 3, tit. 6, art. 47, pp. 108, 113, 114), that, unless the parties have otherwise agreed, a demand of average losses (avaries) is not admissible, if the general average do not exceed one per cent. of the total value of the ship and cargo; and if the particular average do not also exceed one per cent. of the value of the article damaged. All the commentators upon this article agree, that, when the underwriters are liable at all

under this clause, they are liable for the full amount of the average without deduction. 3 Pard. Droit Comm. pt. 3, tit. 5, c. 3, § 4, note 860, p. 427; 2 Locre, Esprit de Code de Com-merce, B. 2, tit. 11, art. 408, pp. 535, 536. None of them make the slightest allusion to any distinction between the aggregate aver-ages of the whole voyage, and an average loss at a particular period. I have, therefore, si-lently drawn the conclusion, that in the com-mercial states of the continent of Europe the distinction is unknown, although most of their policies contain an exception similar in its principles to ours.

Upon the whole, my opinion is, that succes-sive losses on cargo during the voyage, amounting in the aggregate to more than five per cent., are to be borne by the underwrit-ers, and are not within the scope of the ex-ception. The plaintiffs are accordingly enti-tled to judgment, in conformity to the au-ditors' report for these partial losses on the cargo. And, upon the principles already stat-ed, they are not entitled to any partial loss on the ship, the aggregate not amounting to five per cent.