# HARVEY B. HURD

*v.*

# GRANT GOODRICH.

1. EQUITY—*practice—default—reference to the master—exceptions to his report.* Where a bill is filed to compel an account, and the defendant fails to answer, is defaulted, the case referred to the master to state the account, and the defendant failed to object before the master, and excepts in the court below, this court will not, where the account is intricate, attempt to state it. The party desiring to have the rulings of the master in receiving and rejecting evidence, or the principles adopted in stating the account, reviewed, should file objections before the master, pointing out the grounds with reasonable certainty, which, if disallowed by the master, may be reviewed by filing exceptions to the report, in the circuit court, for the same reasons urged before the master.

2. The exceptions in the circuit court are always based on, and confined to, the objections urged before the master. They are regarded as in the nature of a special demurrer, and must specifically point out the grounds of objection. This court will not, as a general rule, consider any objection to a master's report, unless exceptions were taken in the court below.

3. MASTER'S REPORT—*facts—exceptions.* When the master reports the facts correctly, but misapplies the law, in such a case it is not necessary that exceptions should be filed; but this is an exception to the rule.

4. INTEREST—*rests.* As a general rule, the master, without directions from the court, can not, in computing interest, make rests; but there are some exceptions to the rule of practice. Where the facts stated in the bill, and taken to be true by the default, require rests in computing interest, and they are allowed by the master without objection, and the report is confirmed, the objection can not be raised in this court. A trustee is only chargeable with compound interest where he has been guilty of gross negligence, as when the trustee has used the money of the *cestui que trust* for his own purposes, and, it is presumed, with profit.

5. TRUSTEE—*compensation—for services.* Where the account of a trustee is referred to the master for adjustment, and he has failed to claim compensation for his services as trustee, by answer to the bill, or presenting his claim before the master, when adjusting his account, he has no power for the first time to raise the question in this court on error

6. DECREE—*altering or setting aside.* Where the decree is signed and filed for record, or where it is ordered by the court to be recorded, and is duly filed for record by the clerk, and the term has expired, it becomes a matter of record, and can not be altered or amended on motion, except as a mere matter of favor, or quite of course.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

On the 18th day of December, 1866, Goodrich exhibited in the Superior Court of Chicago, his bill in chancery, against Hurd, alleging, in substance, that, on the 17th day of June, 1853, Hurd executed, under his hand and seal, and delivered to Goodrich, a certain declaration of trust, whereby Hurd declared that, on the 7th day of January, 1852, he purchased at administrator's sale, at public auction, certain real estate, describing it (being, in all, two hundred and forty acres), one half of the purchase money being paid down, and a bond and mortgage executed for the balance payable in six months, and therein and thereby acknowledged and declared that he held said premises in trust as follows: One undivided half of said premises in trust for the benefit, use and behoof of Goodrich, his heirs and assigns; the remaining undivided half for the benefit and behoof of Brown & Hurd, comprising the firm of Andrew J. Brown and Harvey B. Hurd, the respective parties paying their proportion of the purchase money, and with the further understanding that Hurd might sell said lands or the timber thereon, according to his best judgment, he accounting to the respective parties in interest, or their legal representatives, for their proportionate shares of the money realized from such sales made by him, the balance of one-half unsold to be conveyed to Goodrich on request. The bill alleges the payment of a blank sum on and toward his share of the purchase money; that Hurd, in pursuance of the trust, proceeded to sub-divide the land into parcels and offer it for sale; that a large share thereof was timbered land of great value; that Hurd, from time to time, sold timber off of portions of it for large sums of money, without sale of the fee, but to whom, when and in what quantities, and for what price, complainant was not informed; and sold different and separate parcels of the land to various persons for large sums of money; that he had received, from time to time, large sums

of money and interest, etc., but to whom, when, in what quantities, and for what price, complainant was not informed, nor as to what part remained unsold ; that Hurd failed to pay over to complainant the share belonging to him, but mingled the same with his own money, and laid out the same in the purchase of other lands and. lots on which he made large profits and gains ; that, during all the time he was receiving moneys from the sale of the timber and lands, he was engaged in buying and selling lands, and complainant's share thereof was mingled with the money with which such purchases were made, on and through which Hurd, as such trustee, made large profits and gains; that, during all the time money was sought for upon loans, could have been readily loaned upon undoubted security, for interest at the rate of ten per cent per annum, payable annually or semi-annually.

Alleges that Hurd had accounted to, and settled with Brown ; alleges that complainant made a demand upon him, in 1854, to account and pay over, and repeatedly since. Bill called for answer upon oath, and prayed for discovery and an account, special and general relief.

On the 20th December, 1866, Hurd entered his appearance in the cause. Afterwards, and on the 14th of March, 1867, Goodrich, by leave of court, amended his bill; and on the 1st day of July caused a summons to be issued to Hurd to appear and answer, which was returned personally served on the 11th of July, 1867.

On the 17th of October, 1867, complainant took a rule upon Hurd, to plead, answer or demur to the amended bill, on or before the following Monday morning. He not having complied, on the 28th of October, 1867, a rule was obtained, requiring him to show cause why an attachment should not issue. On the 25th day of October, 1869, complainant, by leave of court, again amended his bill by striking out the call for answer upon oath, and expressly waiving the same ; and on the 8th of December, 1869, took another rule upon Hurd, to plead, answer or demur to the amended bill within

twenty days; and on the 29th of March, 1870, Hurd's default and a decree *pro confesso* were entered, and the cause referred to the master to take proofs, state and report account as prayed in the bill.   Upon notice to Hurd, the parties appeared before the master and proofs were taken.   On the 29th day of March, 1871, the master filed his report in the cause, stating the account between the parties, with the proofs and exhibits adduced before him, the result of which was, that Hurd was then indebted to Goodrich in the sum of $5940.02.

On the same day of filing the master's report, a rule was taken, requiring Hurd to show cause, if any he had, by the next Monday morning, why the master's report should not be confirmed.

No exceptions having been taken to the master's report, at the April term, 1871, the court made and entered a final decree, confirming the master's report, and decreeing the payment of the amount thereby found due as above stated.

At the May term, 1871, Hurd made a motion, based upon affidavits, and as to which there were counter affidavits, to set aside the decree of the April term, which was overruled by the court.   The matters were preserved in the record and the cause brought to this court by writ of error.

Mr. JOHN A. HUNTER, for the plaintiff in error.

Mr. SIDNEY SMITH, for the defendant in error.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

We have examined the record in this case, and the several points made by plaintiff in error, for reversal, with all the care which the importance of the case, in respect to the amount and principles involved, seemed to demand; and we are satisfied that no one of the points made is tenable, and that, under the circumstances of the case, plaintiff in error has no just cause to complain of the action of the court below in any respect.   The bill of complainant sets forth, with

clearness and certainty, facts sufficient to constitute a case for relief under the most familiar head of equity jurisprudence. The complainant, by calling for a discovery and answer under oath, gave plaintiff in error an opportunity of being a witness in his own behalf in respect to matters peculiarly within his own knowledge, and as to which, from the long lapse of time and the nature of the transactions, it would have been very difficult for complainant to have adduced much, if any, opposing evidence. The bill was filed on the 16th of December, 1866. On the 26th of the same month, plaintiff in error entered his appearance in the cause. The bill was then amended, and on the 1st day of July a summons was issued, which was duly served on the 11th of the same month, for the next August term. Then, although there was a term of the court commencing on the first Monday of every month, no rule was taken upon him to answer until the October term, 1867. The rule was taken on the 7th of that month, and no attention being paid to it, on the 28th of the same month a rule was taken upon him to show cause, by a certain day, why he should not be attached for contempt. Still he did not answer. Then, upon the 25th of October, 1869, complainant, having obtained leave of the court for that purpose, struck out that part of the bill requiring an answer upon oath, and substituted the usual waiver of the oath, and on the 8th of December, 1869, took still another rule upon plaintiff in error, to plead, answer or demur to the amended bill within twenty days. Then, waiting until the 29th of March, 1870, and no steps having been taken to defend the suit, the default of plaintiff was entered, and the usual decree *pro confesso*, with a reference to the master to take, state and report the account between the parties. Notice of the proceedings before the master was given. On the 29th of March, 1871, the master's report was filed, which recites the appearance of plaintiff in error before him. After the filing of the report, and on the same day, a rule was entered, requiring plaintiff in error to show cause, by a particular day, if any he had, why the report should not be confirmed. No

exceptions were ever taken to the master's report, and, at the April term, 1871, a final decree was entered, confirming the report and decreeing the payment of the amount found due, within thirty days, and awarding execution therefor.

It is apparent, from the record, that plaintiff in error was unwilling to answer the bill, either upon oath or without it. By the default, he admitted every matter of fact in the bill, well pleaded. Plaintiff in error is an attorney of this court, of long practice, and must, therefore, have personally known that such would be the effect of a default. He had abundant opportunity to answer, failed to do so, and must, therefore, have intended to submit to all the consequences of a default. He neither made objections before the master, nor filed exceptions in the court below, to the report, but comes into this court, and insists that the amount found due by the master, was, for several reasons, too large. The report shows an intricate and complex matter of account between the parties. Such an account is an unfit subject for examination in an appellate court. In *Dubourg* v. *United States*, 7 Peters, 625, the court, Chief Justice MARSHALL delivering the opinion, said : " We are of opinion that a complex and intricate account is an unfit subject for examination in court, and ought always to be referred to a commissioner, to be examined by him and reported in order to a final decree," and for want of such reference and report, the decree of the district court was reversed. But of what avail would the reference and report be in the case of complex accounts, if the whole matter were open to review upon error, without exceptions in the court below ? Consistently with the convenience of courts of equity in this respect, their mode of procedure requires the party, who may desire to have the court revise the rulings of the master as to the admission or rejection of evidence, or the principle upon which an account is stated, to file objections to the master's report before it is returned into court, pointing out the grounds with reasonable certainty ; then, if the master still adheres to his rulings and report, and returns it into court, the party

objecting may then file his exceptions to the report, corresponding with the objections made before the master, upon the hearing of which the whole, or such part of the evidence as may be material, will be brought forward and be subject to review by the court. *McClay, Adm'r,* v. *Norris,* 4 Gilm. 370; *Brockman* v. *Aulger,* 12 Ill. 277.

The exceptions are always to be confined to such objections as were allowed or overruled by the master. *Copeland* v. *Crane,* 9 Pick. 73; *Methodist Episcopal Church* v. *Jaques,* 3 Johns. Ch. R. 81; *Byington* v. *Wood,* 1 Paige, 45.

They are regarded as in the nature of special demurrers, and the party objecting must point out the error. *Wilkes* v. *Rogers,* 6 Johns. R. 566; *Story* v. *Livingston,* 13 Peters, 359; *Dexter* v. *Arnold,* 2 Sumner, 108.

As a general rule, this court will not consider any objections to a master's report unless exceptions were taken in the court below. *Whitesides* v. *Pulliam,* 25 Ill. 285.

Where the master, by his report, states all the facts correctly, but is mistaken as to the legal consequences of those facts, it is not necessary for the party dissatisfied with the master's finding to except to the report, as the question decided by the master may be opened, upon further directions, without exceptions. 2 Dan. Ch. Pr. 1492.

This is an exception to the general rule, but this case does not fall within it, for it is not a case where the master states the facts. The objections to the master's report are made for the first time in this court. They embrace three separate grounds :

"*First*—The statement of the account, with annual rests."

"*Second*—The refusal to allow plaintiff in error compensation for his services."

"*Third*—The ruling of the master in respect to what is called the Anderson & Brown purchase."

First, then, as to the statement of the account with annual rests : There was no direction to the master in this respect, in the interlocutory decree; and, as a general rule, the master is

not at liberty to make rests in the account unless directed to do so by the decree.　2 Dan. Ch. Pr. 1434 ; *Webber* v. *Hunt*, 1 Mad. 13.　The question therefore arises whether, having made the rests in the account without any previous direction to do so, the decree, under the circumstances of this case, should, for that reason, be reversed.

If the facts set out in the bill, and admitted by the default, afford a sufficient ground for the rests in the statement of the account, then, even if plaintiff in error had made objections before the master, and filed exceptions to the report upon its being returned into court, it would have been entirely competent for the court below to have made the direction *nunc pro tunc* and overruled the exception.　But, not having filed any exceptions, and the report of the master having been confirmed by the court below, it is to be presumed that the court made such confirmation in view of the facts alleged in the bill and admitted by the default, rather than upon what was shown before the master. If such facts were sufficient to warrant the allowance of compound interest, the court below was right in confirming the report, and, notwithstanding the want of directions to the master, this court will not reverse for that reason. A trustee is chargeable with compound interest only in cases of gross delinquency.　*Clarkson* v. *Depeyster*, 1 Hopkins' R. 424.　As where he refuses to account.　*Myers* v. *Myers*, 2 McCord Ch. R. 214, 266 ; or, where he has used the money of his *cestui que trust* for his own purposes, and there is an actual or presumed gain of the trustee by the use of the funds. *Schreffelin* v. *Stewart*, 1 Johns. Ch. R. 620 ; *Ringgold* v. *Ringgold*, 1 Harr. & Gill, 11.　The bill shows plaintiff in error to have been a trustee by virtue of a formal declaration of trust. The case so made could not be varied by proof before the master ; therefore the question of partnership is not in the case.

The allegations of the bill also show that the trust was created in June, 1853 ; that Hurd began to sell the trust property immediately after ; that he received large sums of money

from such sales, belonging to Goodrich ; that, during the year 1854, and from time to time, at short intervals since, the latter repeatedly and persistently requested and importuned Hurd to account with him concerning his said trust and the moneys received by him, and to pay the same over ; that sometimes Hurd professed his inability to do so without great sacrifice ; at others he would promise to account, and pay over as soon as he could make out the account ; at other times he would pay small sums, with the assurance that he would speedily render such account, which promises he failed to keep ; and recently, on such demand, has refused to do the same until it should be convenient for him to do so. The bill alleges that he had a large amount in his hands as such trustee, belonging to complainant therein, and that during all the time he was using it in buying and selling real estate, and from such use realized large gains and profits, and the prayer of the bill asks for compound interest. We think the matters set out in the bill sufficient to support the allowance.

The second objection relates to his allowance for services. It is a sufficient answer to that objection, that he should have set up the claim by answer, or presented it before the master, and the question can not be raised for the first time in this court, without exception to the master's report.

The third objection relates to what is called the Anderson & Brown purchase. It is unnecessary to extend this opinion by setting out the evidence bearing upon that item. It is peculiarly one of the cases where an objection should have been made before the master, and exceptions filed in the court below.

The remaining question arises upon the refusal of the court below to set aside the final decree rendered at the April term, upon a motion made at the May term of the court.

It has been held, under practice similar to ours, that a decree is to be considered as enrolled when it is signed by the chancellor and filed by the clerk, and the term has elapsed during which it was made. *Burch* v. *Scott*, 1 Gill & Johns.

393; *Dexter* v. *Arnold,* 5 Mason, 303, 310; *Whiting* v. *Bank of United States,* 13 Peters R. 6, 13.

By the former English practice, the decree did not, strictly speaking, become a record of the court until it had been enrolled. "In fact, till a decree has been enrolled, and thereby become a record, it is liable to be altered by the court itself upon a rehearing; whilst a decree which has been enrolled, is not susceptible of alteration except in a court of appeal, or by bill of review." 2 Dan. Ch. Pr. 1221, 1232. The enrollment of decrees in England is now little known in practice. Coop. Eq. Pl. 91. The English practice of enrollment has never obtained here, but when a decree is ordered to be entered by the court, is duly filed for record by the clerk, and the term at which it was so entered has elapsed, it becomes a matter of record, surrounded with all the sanctity of an enrolled decree, and can not be altered or amended at a subsequent term, upon motion, except for the correction of mere clerical errors, or of form, or in respect to matters quite of course. *Lilly et al.* v. *Shaw et al. ante,* p. 72.

No error being apparent in the record, the decree of the court below must be affirmed.

*Decree affirmed.*