## John McMannomy v. Edwin Walker et al.

1. EQUITY PRACTICE—*When the Master has not Followed the Terms of the Reference.*—If a master to whom a cause is referred does not follow the terms of the reference the remedy is not by excepting to his report but a special application should be made to the court for an order to have the irregularity corrected.

2. SAME—*When the Report is Right upon the Facts but Wrong upon the Law.*—If the master has reported the facts correctly, with a wrong legal consequence, no exception is necessary. The question may be raised without taking exceptions to the report.

3. SAME—*When the Master's Conclusions of Fact are to be Questioned.*—If the master's conclusions of fact are to be questioned exceptions to his report must be taken.

4. SAME—*Taking of Accounts.*—If accounts to be taken in the course of a chancery suit are difficult or complicated they must be referred to a master, not because of any statute but by usage and practice, and the master must report his conclusions thereon. The parties can not put their labor upon the court, and if the court assumes the labor it is error. If done by stipulation of the parties the decree will be affirmed without examination.

5. SAME—*Practice in Stating Accounts.*—The master should require the parties first to state their own accounts so that the evidence may be confined to disputed items; in some cases the court will order an account to be prepared by a party complainant with his bill, so that the proceedings shall be in reasonable form in case of an appeal.

6. Same—*When the Account is Stated—Proceedings Before the Master.*—The master having stated the account, and given notice to the parties that he has prepared a draft of his report, either party may, before the master, object to any conclusion of the master. If the master adheres to his conclusions the party may renew his objections, as exceptions before the court, to the same conclusions.

7. Same—*Exceptions, When Overruled by the Master.*—When objections to the conclusions of the master are disallowed, if the objecting party desires it the master must report to the court the exceptions disallowed and state specifically all the evidence relating thereto, and upon which such conclusions were reached, when such exceptions will stand for hearing before the court.

8. Same—*Report to be Received as True if no Exceptions are Taken.*—It is not the province of a court to investigate items of account. The report of the master is to be received as true when no exception is taken; and exceptions taken are to be regarded so far only as they are supported by the special statements of the master, or by evidence which ought to be brought before the court by a reference to the particular testimony on which the exceptor relies; for otherwise the court will not wander at large into the evidence in order to ascertain whether, by possibility, the master was wrong in his conclusion or not.

9. Same—*Province of the Court—Report of the Master.*—It is too much to ask of the court to grope through vast masses of testimony in search of error which is alleged to exist somewhere, and by connecting the accountant with the judge to ascertain what the error is; it was the duty of the dissatisfied party to except to such items as he considered improperly charged, and it would then have been the duty of the master to certify the evidence by which the disputed item was sustained.

10. Statutes Construed—*Chancery Practice.*—Section 39, chapter 22, R. S., entitled "Chancery," providing that the court may upon default, or upon issue being joined, refer a cause to a master in chancery or special commissioner to take and report evidence, with or without his conclusions thereon, has no relation to taking accounts.

**Creditor's Bill.**—Appeal from the Circuit Court of Cook County; the Hon. Murray F. Tuley, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed March 31, 1896.

John M. Southworth and William Brown, attorneys for appellant, contended that it is too late for counsel to urge the insufficiency of exceptions in this court. But even were it in apt time, this court, upon observing the exceptions, will find they adequately point out the grounds for objection to the report of the master as to the allowances to Walker. It was and is impossible to point out any evidence to justify

this sequestration to the use of Mr. Walker of the enormous sum of $127,000 under the pretense of paying him for services of no great extent when compared with the sum appropriated. It is the lack of evidence to sustain the master's report that justifies the exceptions, one and all. It was impossible to point out what does not exist. There was but one fact which the master was to report upon, and that was, what should Mr. Walker be allowed? and all the testimony taken before him related to that fact, and it is absurd to now say that the exceptions to the master's report should point out the evidence which did not justify the allowances made to him, when it was all taken with reference to those allowances and none of it justified such allowances.

But these exceptions are not wanting in any of the elements of certainty, and are not obnoxious to the objections raised by counsel for appellee. The cases cited are all very good law, but are not in any respect authority against the adequacy of these exceptions when applied to this case. These exceptions question the conclusions both of law and fact, as reported by the master, and we respectfully submit that there is no evidence or law which justifies and sustains his conclusions upon either.

By reference to the case of Deimel v. Parker, 59 Ill. App. 426, this court will observe that the exception here questioned is in no respect like the one held to be insufficient in that case.

In order, however, to meet the objections of counsel for appellee (which we, by the way, regard as exceedingly technical), we propose to take up and discuss the important and principal exceptions filed in this case, and to show that the evidence for and against the matter embraced in said exceptions ran through every page of the evidence taken by the master and reported in this cause. Take for example the sixth exception: "For that the master has found that the sum of $85,000 is a fair and reasonable compensation for the services performed by the said Edwin Walker as the attorney of the said Chicago, D. & V. R. R. Co."

There is scarcely a page of the evidence taken before, and

reported by the master, that does not allude to and that was not taken with reference to this exception. The only "pointing of the evidence to sustain" that objection that could have been done, would have been to have suggested the whole of the evidence taken by the master, and as the case was referred to him to find what was the "usual and ordinary compensation paid for such services," and as nearly all the evidence taken was upon that point, no particular portion of it could be pointed out by objections or exceptions.

This, the sixth exception, is and was the most important exception filed. To have said that it should have pointed out the evidence to sustain this exception would simply have been to refer to the master's report.

Also take the seventh exception, viz., that the master has not found what is the usual and ordinary compensation paid for such services as were rendered by the said Edwin Walker, etc., as the said master was in and by said decree and order of reference ordered and directed to do.

This exception directs the attention of the court to the order of reference, viz., the decree and the report of the master, which would seem to be sufficiently definite. It could not be more so. The tenor of all the evidence sustains this exception.

The eighth exception is susceptible to the same interpretation as that of the sixth exception. And also as to the thirteenth exception there was absolutely no evidence to sustain the finding there referred to. And there being no evidence none could be referred to or pointed out.

There are various other exceptions that could not be construed as referring to any other than Mr. Walker's testimony, and hence sufficiently definite. But there is one notable exception filed and not excepted to by counsel for appellee, viz., the fifteenth, which says:

"For that the said master has allowed the said Edwin Walker a credit of $2,000, secured by him in bonds instead of coupons thereof, which is no proper credit."

There is absolutely no evidence in the record to support this finding, and so none could be pointed out or referred to.

It was allowed in order to balance Mr. Walker's account, and for no other purpose. We challenge this or any court to find in this record a particle of justification for this allowance. It was arbitrary, unjust and indicative of the evident intention of the master to give to Mr. Walker all he claimed with or without evidence.

We will not follow the objections raised by counsel for appellee any farther than to say, of one and all of these criticisms, that they are hypercritical and evince an overlearning in unrestrained and visionary technicalities, which are made use of to becloud real questions, and to lead the court, if possible, from a consideration of the merits of this controversy between a creditor of a bankrupt company and a director who is attempting to enrich himself with the spoils of the affray, at the expense of those who in good conscience should have the fruit of his honest toil.

T. A. MORAN and S. S. GREGORY, attorneys for appellees, contended that if the appellant has not preserved proper exceptions to the report of the master, then the decree must be affirmed.

This court has repeatedly laid down the rules of chancery practice necessary to be observed in taking exceptions to the report of a master. Unless these are followed, the errors of the master become, to borrow a phrase recently employed by a member of this court on a public occasion, "judicially invisible," or perhaps, to speak more consistently with the idea that justice is always pictured blind, "judicially inaudible." The earliest case in which this subject was fully discussed in this court seems to be Huling v. Farwell, 33 Ill. App. 238.

There is in this case considerable citation of authority, and on the question of general exceptions, such as are filed here, it was said:

"The reasons for requiring a report assigned in Moss v. McCall, 75 Ill. 190, are no reasons at all, if by general exceptions the court may be required to search the whole evidence and determine whether upon all of it the master has reached right conclusions of fact. All of the exceptions on

both sides should have been overruled, as they only showed the dissatisfaction of the parties with particular findings of the master but gave the court no clue to the data upon which the master acted." Ib. 242.

This was soon followed by Heffron v. Gore, 40 Ill. App. 257, in which the rule was briefly stated, thus:

"The court will not wander at large into the evidence, and therefore, either party who may wish to object before the master and except before the court, to the allowance or disallowance of any item, should require the master to state the evidence and reasons upon which he allows or disallows that item." Ib. 265.

In Brown v. McKay, 51 Ill. App. 295, the matter was again considered, and it was said: "These exceptions require the court to search through the mass of evidence to determine if they are well taken. There is a neglect to point out what the evidence is upon the conclusions of the master, which the party disputes. Such a practice renders the report of the master of no assistance to the court and is one which the court is not bound to tolerate" (citing cases).

Again:

"If either party is dissatisfied with the master's report, exceptions may be filed thereto; if the exceptions be to findings of fact, the evidence as to such facts should be set forth or pointed out with such directness that the court may readily find the same without searching through the entire record." Ib. 299–300.

There is in this case a very full citation of authorities.

In Hodson v. Glass Co., 54 Ill. App. 248, the same ground was again traversed, and this explicit and definite language employed:

"Seventeen exception were taken to the master's report. The exceptions, instead of pointing out the evidence which, it is claimed, shows the conclusions of the master to be unwarranted, and by reference to the pages of the proofs returned by the master with his report, making it easy for the court to find upon what the exceptions are based, in effect call upon the chancellor to search through the evi-

dence and find, if he can, that which will justify the exceptions."

" Exceptions are to be regarded so far only as they are supported by the special statements of the master, or by evidence which ought to be brought before the court by reference to the particular testimony on which the exception relies " (citing cases).

" The chancellor would have been justified in overruling the exceptions to the master's conclusions upon the facts for the reason alone that the particular evidence relied upon to sustain such exceptions was not pointed out with such definiteness that it could easily be found without searching, either through the mass of evidence, or unnecessarily through any part thereof." Ib. 250.

However, counsel seem to be slow to heed the admonitions of this court in this regard; and so it happens that in the last volume of the reported decisions of this tribunal are to be found three cases in which the same disregard of the settled rules of procedure in chancery is commented upon : Friedman v. Schoengen, 59 Ill. App. 376, Wolcott v. Lake View Bldg. & Loan Association, Ib. 415, and Springer v. Kroeschell, Ib. 434.

In the first of these cases this court said, p. 377 :

" To this report objections filed before and overruled by the master were refiled in court as exceptions. All of these exceptions are based upon the proofs, not upon the master's conclusions as to the facts. They might properly have been overruled, because there was not as to either, any specific pointing out, by definite reference or citation, the particular evidence relied upon to maintain the exception; on the contrary, the chancellor was asked to search through the entire mass of proofs and find evidence which would sustain the exception.

" Such a course renders the report of the master of no assistance to the court, and is one which it is under no obligation to tolerate."

In the second case the court said, p. 419 : " Substantially all of said exceptions are based upon the evidence, yet none

point out the evidence upon which appellant relies to sustain the exception. The court is called upon to search through the entire mass of evidence to see if something can not be found which will sustain the exception. The court is under no obligation to do this. Such a course renders the report of the master of no assistance, and is one which it is under no obligation to tolerate." In the last of the three cases it was said, p. 537 :

"We might decline, under well established rules, to examine the voluminous and complicated record to which only such general exceptions were filed. This is a court of review, and generally only such matters as have been pointed out in the court below, and considered there, are proper subjects for review here." Following this language, a number of cases in this and other jurisdictions, sustaining this proposition as applied to exceptions to a master's report, are cited and quoted from. Rockwell v. O'Brien-Green Co., 62 Ill. App. 293.

The exceptions of the appellant in this case are open to these objections and some of them to others. The first exception is as follows :

" First. For that the said master erred in finding, and by his report has found, that the said Edwin Walker was 'retained' by the receiver of said Chicago, Danville & Vincennes Railroad Company as his counsel only, and paid for his services to said receiver the sum of $4,000 per annum, because the evidence taken before the said master, and the vouchers signed by the said defendant Edwin Walker, show that he, the said Edwin Walker, received from said receiver the sum of $400 per month, or at the rate of $4,800 per year, instead of $4,000, as found by said master in his said report."

The form of this exception well illustrates the propriety of the rule so frequently announced by this court. For, on looking into the record, with the aid of appellant's brief, it is quite impossible to find any evidence to sustain this exception. It does appear at the place referred to in the brief that for services as solicitor to the receivers Mr. Walker

McMannomy v. Walker.

received, or at least the master of the Federal Court reported that he ought to receive, $400 per month for February, March, April and May, 1875.

But it is a matter of no importance whether he was paid $4,000 or $4,800 per year as solicitor for the receivers. His services as such are quite distinct from those for which he was entitled to retain the bonds claimed to be assets of the Danville company. Where a receiver, representing mortgage bondholders, undertakes the management of an insolvent railroad company, it is not proper nor usual for him to defend or prosecute, at the expense of such bondholders, litigation in which not they, but the insolvent corporation, may be interested. All claims against the company, not prior to those of the bondholders, are matters essentially foreign to his trust. He should not expend the funds of those whom he represents in their defense. Some claims, where priority is asserted over the lien of the mortgage, like those for material, equipment, labor, etc., just prior to the receivership, require his attention, but none other. This is, therefore, a wholly immaterial matter, but if it were material, unless something can be found in the record other than what is indicated by counsel, the master's finding on this point can not be impeached. The reference in the brief on this point is to page 137 of the abstract, and record, 243. At the latter place is found the report of the master in chancery of the Federal Court. P. 137 of the abstract, so far as this point is concerned, is as follows:

Abstract of petition of Edwin Walker for allowance of salary as solicitor for Chicago, Danville & Vincennes Railroad Company. Cause entitled:

In Circuit Court U. S. Northern District Illinois.

FOSDICK & FISH
vs.
CHICAGO, DANVILLE & VINCENNES
RAILROAD COMPANY.
} In Chancery.

To Judge of Court:

Edwin Walker represents, has been solicitor Chicago, Danville & Vincennes Railroad Company, and was such during the months of February, March, April and May,

1875; Brown and Hammond, *de facto* receivers during said months.

Petitioner represents: That during said months he had charge of the legal business as before, salary past year $400 per month; had returned vouchers for amount to company for said months, but not paid. States services rendered at request of receivers and now due him as salary $1,600, and expense $44.30. Prays receiver have authority pay same and charge operating expense of road.

Copy letter receivers to Walker, March 5, 1875.

Shows authority for receivers to appear as attorney in all suits and asks if Walker is willing to assist in defense of same.

Letter of Walker to receivers, March 6, 1875.

Will furnish statement of suits, and claims authority from court to defend suits of road.

Letter of receivers to Walker, March 8, 1875.

Desire Walker to assist their counsel on behalf of receivers.

Master's report U. S. Court on above petition.

The next exception is as follows :

"Second. For that the said master finds that said retainer covered only consultations and advice to the said receiver, and attending to suits in which the receiver was personally made a party," etc.

That this exception goes to the ruling of the master upon a question of fact arising on the evidence, and wholly fails to conform to the rule of this court, in even faintly indicating upon what evidence it is based, is too patent for discussion. But it is wholly unsupported by the evidence.

The third, fourth and fifth exceptions may be grouped together, and are as follows :

"Third. For that the said master does not find that he, the said Edwin Walker, was employed by the receiver for the purpose of and was paid by said receiver for and to prosecute and defend all suits brought by or against said railroad company, whether theretofore or thereafter commenced, and that the sum paid to said Edwin Walker by said receiver for his, the said Edwin Walker's services as an at-

torney, was payment in full for all services rendered by the said Walker in the prosecution and defense of all suits for or against the said railroad company, and for all services performed by the said Walker in connection with said railroad company or receiver during the time he was so employed, and paid by said receiver between the first day of February, 1875, and the ninth of June, 1877, excepting for services in the foreclosure cases in the decree rendered herein mentioned.

Fourth. For that the said master finds that the moneys paid by the said receiver to the said Edwin Walker did not cover, and that he was not paid for any services rendered by said Walker on the various intervening petitions filed in the case of Fosdick & Fish v. Chicago, Danville & Vincennes Railroad Company, or the case of Stephen Osgood v. Chicago, Danville & Vincennes Railroad Company.

Fifth. For that the said master did not find that the employment and payment of the said receiver by and to the said Walker, did not include his, the said Walker's services in all matters pertaining to the said railroad company except said foreclosure suits, including services performed in connection with all intervening petitions filed therein."

In none of these exceptions is there the slightest reference to any testimony which appellant claims sustains them. The reason of this probably is, that there is no such evidence. There is not in the record anything on which to base any or either of them. The application of the rule contended for, therefore, works no hardships to the appellant so far as these exceptions are concerned. The next is as follows:

" Sixth. For that the said master has found that the sum of $85,000 is a fair and reasonable compensation for the services performed by the said Edwin Walker for the Chicago, Danville & Vincennes Railroad Company."

This is a classical example of those exceptions which this court has repeatedly declared, avail a party nothing. It is simply an invitation to the court to retry this question on all the evidence, to " search through the evidence and find, if he (it) can, that which will justify the exceptions." By

it "the court is called upon to search through the entire mass of evidence, to see if something can be found which will sustain the exception."

The next two exceptions are as follows:

"Seventh. For that the said master has not found what is the usual and ordinary compensation paid for such services as were rendered by the said Edwin Walker as the attorney of the said Chicago, Danville & Vincennes Railroad Company, as he, said master, is in and by said decree and order of reference ordered and directed to do.

Eighth. For that in so finding that the sum of $85,000, received by the said Edwin Walker as compensation for his, the said Walker's services, is a fair and reasonable compensation for his services performed for the said Chicago, Danville & Vincennes Railroad Company is not in accordance and compliance with the order of reference and decree of the court in this cause, and is not the usual and ordinary compensation paid for such services, but is in amount far in excess thereof, and is exorbitant, unreasonable in amount, and inequitable and unconscionable."

The basis for each of these is the same, namely, that the master did not proceed in accordance with the interlocutory decree, referring the cause to him.

This has been by this court expressly decided to be not the subject of exception. Deimel v. Parker, Jr., 59 Ill. App. 426.

It would not be difficult to fortify this decision with abundant citation of authority, if such were necessary. 2 Daniel, 1309, note 1; 2 Beach Eq. Pr., Sec. 702.

The next two exceptions refer to the same matter, and are as follows:

"Ninth. For that the master has erred in finding that the expenditures and outlays not refunded to him, the said Edwin Walker, for and on account of the said Chicago, Danville & Vincennes Railroad Company arising out of its litigations as its attorney and solicitor, amounted to the sum of $20,000, because he, the said Edwin Walker, has filed no itemized account of or vouchers for the said sum as he must do before the said expenditures can be allowed to him.

Tenth.  For that the master has found that the sum of
$20,000 (was) expended by the said Edwin Walker as ex-
penditures and outlays were not, nor any portion of them,
proper expenditures that he, the said Edwin Walker, should
have made for or on account of the said Chicago, Danville &
Vincennes Railroad Company arising out of its said litiga-
tion, the allowance for which is in said decree provided for."

These two exceptions are clearly within the condemnation
of the rule held by this court, as in no manner referring to
the evidence on which they are based, and the ninth is so
obviously baseless as to require no consideration, if sufficient
in form.  It is quite untenable to say that in an account a
master must disallow items established by competent evi-
dence, because an itemized account thereof or vouchers
therefor are not filed.  The tenth treated as in proper form
is, if intelligible, also manifestly unfounded in fact.

It is a rule of chancery procedure, that where one general
exception is taken to a report, including several distinct
matters, and the report appears right in any one instance,
the exception will be overruled.  1 Barb. Chy. Pr. 552.

The interlocutory decree required the master to find the
amount of any proper expenditures that Mr. Walker had
made as such attorney for the Danville company and what
services he had performed, etc.   The sum of $20,000 referred
to in this exception was made up of various disbursements
made by Mr. Walker for the Danville company and testified
to by him.  As this exception goes to the whole amount
without discrimination, and as there is evidence tending to
sustain the finding of the master in this regard this court
will refuse, acting on a principle analogous to that just
quoted, to disturb this finding if it is, as to any considerable
part, clearly right.  In order to procure a review by this
court of the action below on this, appellant should have
distinctly indicated, either the items or the specific portion
of the sum of $20,000 which was improperly allowed.

By one general exception, alleging that it was all of it
improperly allowed, he simply invites judgment on the ques-
tion, was it all improperly credited to Mr. Walker.   Clearly

the greater part of it was not, for it was made up of a judgment against the Danville company which, with interest and costs made up about $15,000 and was paid for the company by Mr. Walker. It is not remarkable that after such a lapse of time, and in view of the fact that by the payment to Mr. Walker in Eastern Illinois bonds, all matters between him and the company were supposed to be finally settled and closed up, he should not have been able to produce a more detailed statement, nor go into these matters more minutely.

The next two exceptions refer to the conveyance of the Chittenden farm, and are as follows:

"Eleventh. For that the said master has found that no credit should be made by the said Edwin Walker, or charge to him by reason of the conveyance to him, the said Edwin Walker, of the certain piece of property known as the Chittenden farm, for and upon the expenditures so made, as claimed, by and about the foreclosure suit against said Chicago, Danville & Vincennes Railroad Company.

Twelfth. For that the said master has not found, from the evidence herein, that the said Edwin Walker sold the said Chittenden farm for the sum of $24,000, and that the said sum, or whatever sum the same might be sold for, and the conveyance so made thereof to him, the said Walker, should be, and was to be in full payment of and for any and all expenditures made by the said Edwin Walker for and on account of one certain appeal bond, and all other expenditures made by the said Walker for and on account of said litigation prosecuted by the said Walker for the said Chicago, Danville & Vincennes Railroad Company."

These exceptions also are plainly open to the objection already pointed out in that they do not in any way indicate or refer to the evidence on which they are based. However, the master found, and the evidence warrants the finding, that Judson, Young and Tenny, having bought this property, and incurred obligations for the payment of the purchase price which they were utterly unable to meet,

their interest in the property being worth absolutely nothing, induced Mr. Walker to relieve them of this burden, assume their obligations and make their payments. In consideration of the risks which he thus incurred he was to have whatever he made out of it.

Neither Mr. Judson nor Mr. Tenney contradict this, though their testimony is vague, and Mr. Walker's testimony is clear and positive on the point.

The next exception is as follows :

" Thirteenth. For that the said master finds, that with reference to the payment of $10,000 in bonds to the said Edwin Walker for becoming surety upon the bond of indemnity to the Chicago & Eastern Illinois Railroad Company was a fair and reasonable compensation for so doing is erroneous, because there is no evidence to support said finding, and because the said allowance, so made by the said master, is not a proper allowance to be so made, and not warranted either by the law or evidence as a proper charge against the said Chicago, Danville & Vincennes Railroad Company."

In so far as this exception is based on the statement that there is no evidence in the record to show that this was a reasonable compensation, it is obviously untenable. All the facts and circumstances were shown in evidence, and even if no witness testified as to what was a reasonable compensation to Mr. Walker, this was a question of fact, first for the master, and afterward, on a proper exception, for the court. Therefore on this point the exception must fail. In so far as it asserts that this allowance is not warranted by law, that is a proper exception; but in determining it the facts must be taken to be as found by the master; and as he finds this was a reasonable allowance for the service rendered and risks incurred there can be no question that on this finding of fact the conclusion of law was proper.

The assertion that it is not warranted by the evidence is formally insufficient, for the reason so often referred to. The facts, however, are plain, and fully warrant the master's finding. The officers of the Eastern Illinois company absolutely refused to perform their agreement with Mr. Judson.

Unless they did, nothing would be realized, either for him, appellee, the bondholders, or this appellant, to claim. Mr. Walker finally gave the Eastern Illinois his bond for $150,000, conditioned to indemnify them in this transaction. He assumed this great obligation at a critical moment, when no one else, satisfactory to the Eastern Illinois, was willing to do so, and thus made it possible to secure performance on the part of that company. Ten thousand dollars was not unreasonable for such a service and such a risk. He had absolutely no one to look to for indemnity in respect of his liability thus incurred.

The next exception is as follows:

Fourteenth. For that the said master has found that the said Edwin Walker paid from the sum of $127,000 so received by him of the assets of the said Chicago, Danville & Vincennes Railroad Company, the sum of $10,000 to certain and various solicitors for services rendered to and for him, the said Walker, the sum not being a proper charge, allowance or disbursement by him or otherwise for and on account of the said Chicago, Danville & Vincennes Railroad Company or otherwise, and furthermore, that the said Edwin Walker had not filed or exhibited any itemized account of or vouchers for said expenditures.

This exception in no way refers to the evidence nor to any disputed question of fact except in its reference to failure to file or exhibit an itemized account or vouchers. Certainly the failure to file or exhibit an account or vouchers would not warrant the master in disregarding an item proved by other evidence. The exception, therefore, challenges the ruling of the master only in matter of law. Inasmuch as there is no suggestion that this payment to distinguished counsel was excessive, and as their services were rendered substantially in behalf of the Danville company, as associates of Mr. Walker, there is nothing in this exception. The report in substance holds that these payments were made to counsel associated with Mr. Walker in behalf of the railroad, and the evidence accords with this. But whether such a conclusion is warranted by the evidence

is a question not in any way raised by this exception unless this court can say that an itemized account or vouchers not appearing, no such conclusion could possibly be reached on other evidence. The exception misstates the report in so far as it alleges that the master found this payment was for services rendered to Mr. Walker.

The last two exceptions are as follows, and are grouped together, as they are both so clearly ineffective for any purpose that it is not necessary to discuss them further:

"Fifteenth. For that the said master has allowed the said Edwin Walker a credit of $2,000 received by him in bonds, instead of coupons thereof, which is no proper credit.

Sixteenth. For that the findings of the said master are contrary to the evidence and to law and equity."

If the exceptions filed are formally sufficient, then the sixteenth is all that would have been necessary. It is but slightly more obnoxious to the true rule than those which precede it.

MR. PRESIDING JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

The statutory law of this State has been always, in substance, what it is now—that courts having chancery jurisdiction are to proceed "according to the general usage and practice of courts of equity" in particulars not regulated by statute, or rules established by the judges of the respective courts, "consistent with the practice of courts of chancery, in cases not provided for by law." Secs. 1 and 2, Ch. 22, Chancery.

Thus the general usage and practice of courts of equity, in particulars not otherwise regulated by statute or rule, is a part of the law of the State, established by legislative enactment, and so treated by the Supreme Court at an early date. McClay v. Norris, 4 Gil. 370.

And in that case the books of practice are cited with approval, showing that "there is no question of law or equity, or disputed fact or facts, which a master may not

have occasion to decide upon, or respecting which he may not be called upon to report his opinion to the court."

But the usage and practice did not warrant sending the witnesses before a master, to be there examined and cross-examined by the solicitors of the parties, merely that the testimony might be reported by the master to the court. The mode in which the evidence should come before the court is described in the case cited.

Then came the act of February 12, 1849, which provided that in chancery " the evidence on the part of either plaintiff or defendant may be given orally, under the same rules and regulations as evidence in cases at common law," which enactment has, in substance, continued in force to this day. Sec. 38, Ch. 51, Evidence.

The right to put in oral testimony under this statute was rigidly guarded. Maher v. Bull, 39 Ill. 531.

Still this statute was held not to abrogate the former law that a decree in chancery, giving relief—or denying relief where a ground for it is shown—must be justified by what appears in the record, or it will be reversed on appeal. White v. Morrison, 11 Ill. 361.

And it was there held that the evidence justifying the decree might be stated in the decree, in a bill of exceptions, in a certificate of the judge, or in a master's report. That was before the days of typewriters; nor was stenography resorted to so freely as of late. A practice grew up prompted partly by the greater convenience in appearing from time to time before a master, than to go through a case on one continuous hearing before the court, and partly by the general willingness of lawyers to have somebody else do the work—a practice of which an instance may be seen in Grob v. Cushman, 45 Ill. 119, of referring a cause to a master to hear and report the evidence.

By the Revised Statutes of 1872, Sec. 39, Ch. 22, Chancery, that practice received legislative sanction, with the addition that the master might be required to report his conclusions thereupon, whether of fact or law, or both, the statute saith not.

By construction, however, a reference, since the statute,

has a much greater effect than it had under the former practice; for whereas a party might introduce under that practice, further evidence on the hearing before the court, except in a case of accounting (case last cited), now, upon such a reference, all the evidence must be put in before the master. Cox v. Pierce, 120 Ill. 556.

In all this course of legislation and decision, there is no hint that the usage and practice as to reviewing the proceedings before the master, was in any particular changed. Whatever that usage and practice was, it still has the force and effect of positive law, because the legislature has so enacted.

Now what was, what is, that usage and practice ? If the master has not followed the terms of the reference to him the remedy is not by excepting to his report, but a special application should be made for some sort of order to have the irregularity corrected. Deimel v. Parker, 59 Ill. App. 426, citing Tyler v. Simmons, 6 Paige 127.

If he has reported the facts correctly, with a wrong legal consequence, no exception is necessary; the question may be opened without. 2 Dan. Chy. 1310; 1 Barb. Chy. 553.

But if his conclusions of fact are questioned, then, to review them, exceptions must be taken. And because of the many instances before us in which the usage and practice of courts of equity in relation to such exceptions has been disregarded, I propose to define or describe that usage and practice, so far as relates to taking accounts before a master, with so much of detail and reference to authority that a wayfaring man may know, if he will, what it is. That it is no new question here, see Minchrod v. Ullman, 60 Ill. App. 400, and Williams v. Lindblom, Ibid. 465.

And first, if accounts to be taken in the course of a chancery case are difficult or complicated, they must be referred to a master—not because of any statute—but by usage and practice.

Sec. 39, Ch. 22, has no relation to taking accounts.

The master must always have reported his conclusions on accounts. The parties can not put the labor upon the

court; and if the court assumes the labor, it is error. Mosier v. Norton, 83 Ill. 519; Beale v. Beale, 116 Ill. 292.

The master should require the parties first to state their own accounts, so that the evidence may be confined to disputed items. Patterson v. Johnson, 113 Ill. 559; 2 Dan. Chy. 1222.

In some cases the court will order an account to be prepared by a party complainant with his bill, so that the proceedings shall be in reasonable form in case of an appeal. Morgan v. Morgan, 48 N. J. Eq. 399.

The master having stated the account, and given notice to the parties that he has prepared a draft of his report, either party may, before the master, object to any conclusion of the master. If the master adheres to his conclusions, the party may renew his objections, as exceptions, before the court, to the same conclusions. It is at this stage that the proceedings in so many cases become irregular and abortive.

It has become common here to refer chancery cases, under the section adopted in 1872, to a master to take and report evidence, with his conclusions. He reports his conclusions and all the evidence, with no other order or arrangement than the order of its introduction before him; no statement of where (in frequently several hundred pages) the evidence relating to any one of his conclusions is to be found. Upon this the party excepting expects the court to review all the evidence, pick out the part touching each item excepted to, and thus in effect to take from the labor, which the master performed for the ease of the court, all its usefulness.

An unguarded remark in McClay v. Norris, 4 Gil. 370, that, upon the hearing of the exceptions, "the whole evidence is brought forward and passes in review before the court," has been regarded as embracing the whole law upon the subject. The court there was speaking to no question before the court. The sentence quoted, to be accurate, needs the insertion after the word "evidence," of some words equivalent to "upon which the master found the conclusion excepted to."

In Brockman v. Aulger, 12 Ill. 277, it is said, *apropos* again, of nothing before the court, "when exceptions (objections) are disallowed by the master, if the excepting party desires it, he sends up the exceptions disallowed, together with all the evidence relative thereto, when the exceptions stand for hearing before the court." Upon what evidence a master found any one conclusion, can be known and stated only by himself, and without a statement by the master the court can not know whether it is reviewing the master or exercising original jurisdiction.

To review his conclusion, the court must have a definite statement of the ground he stood upon. Thus, in Mayhew v. Brettingham, Cooper's Chancery Reports, 43, the Lord Chancellor Cottingham, on appeal, referred back to the master a report upon an accounting "to state on what evidence and grounds he allows or disallows any of the charges and discharges complained of by the exceptions taken to his report." Such a reference can not be made by this court. That appeal was in effect a rehearing of the case; here an appeal is only for the correction of errors. 2 Dan. Chy. 1459.

And so, though as before shown, the statement by the court of a complicated or difficult account is error, yet if done by stipulation of the parties, the decree will be affirmed without examination. Riner v. Tonslee, 62 Ill. 266.

And this practice of requiring the master to state specifically the evidence relating to the conclusions excepted to, has been in several instances, in terms approved by the Supreme Court. Hurd v. Goodrich, 59 Ill. 450; Prince v. Culter, 69 Ill. 267; Pennell v. Lamar Ins. Co., 73 Ill. 303.

Seventy years ago the practice and the reason—nay, the necessity—for it were thus stated by Chief Justice Marshall in Harding v. Handy, 11 Wheaton, 103. "It may be observed, generally, that it is not the province of a court to investigate items of an account. The report of the master is to be received as true when no exception is taken; and the exceptions are to be regarded so far only as they are supported by the special statements of the master, or by evidence which ought to be brought before the court by a

reference to the particular testimony on which the exceptor relies. Were it otherwise—were the court to look into the immense mass of testimony laid before the commissioner—the reference to him would be of little avail."

In Greene v. Bishop, 1 Clifford 186, Judge Clifford adopts the doctrine of Judge Story in Donnell v. Columbian Ins. Co., 2 Sumn. 366, in which case Judge Story says: "The evidence which furnishes the ground of the exceptions should be required, by the party excepting, to be stated by the master; for otherwise the court will not wander at large into the evidence in order to ascertain whether, by possibility, the master was wrong in his conclusion or not." In different phrase the Supreme Court of Alabama, in Alexander v. Alexander, 8 Ala. 796, lays down the same rule. "It is too much to ask of the court to grope through a vast mass of testimony and documentary evidence in search of error which is alleged to exist somewhere, and by connecting in this instance, the accountant with the judge, to ascertain what the error is." The court goes on to say that it was the duty of the dissatisfied party to except to such items as he considered improperly charged, and it would then have been the duty of the master to certify the evidence by which the disputed item was sustained. In all these cases the whole evidence before the master must have been before the court, else the court would have had no field to "grope" and "wander" in.

A master's report, not excepted to, is sufficient to found a decree upon. Hurd v. Goodrich, 59 Ill. 450. And exceptions which are futile are no better than none.

I must stop, not for want of material, but because time and space will not permit me to exhaust it. I refer, however, to Mahone v. Williams, 39 Ala. 202, as the most complete case upon the subject.

This is a bill by a judgment creditor of the Chicago, Danville and Vincennes Railroad, and the object sought by it, is to reach the proceeds of some bonds which the appellant claims should be applied to the satisfaction of his judgment.

There was a reference to a master, and upon that refer-

ence the object of the complainant was to fix a liability upon the appellee, for a large amount of such proceeds. The report of the master occupies nineteen pages of this record, and the evidence which accompanied it, more than six hundred; brought in without other arrangement or order than that of its introduction before the master, and without reference in the report to any place where any of the evidence, for or against any of the conclusions of the master, could be found.

To that report the complainant put in before the master, as objections, and renewed before the court as exceptions, what is stated in the abstract, thus :

"First. For that the master erred in finding Edwin Walker only received $4,000 per year as counsel for receiver. Evidence that it was $4,800 per year.

Second. Erred in finding his retainers only covered consultation, advice, etc., and (third) in finding that his retainer was not to prosecute and defend suits, and also erred in not finding that Walker was paid for all services performed by him, exclusive of those in foreclosure case, and (fourth) that said payments of moneys by the receiver did not cover services in relation to intervening petitions.

Sixth. For that said master finds that $85,000 is a fair and reasonable compensation for the services performed by said Walker for the Chicago, Danville & Vincennes Railroad Company and (seventh) for that said master has not found what is the usual and ordinary compensation for such services as were rendered by said Walker.

Eighth. For that such finding is not in accordance with the order of reference herein, and is not the usual and ordinary compensation paid for such services, but is far in excess thereof, and is exorbitant, unreasonable, inequitable and unconscionable.

Ninth. For that the master has found that said Walker's expenditures were $20,000 when he filed no itemized account thereof or vouchers therefor, and (tenth) that the same were not proper expenditures.

Eleventh. For that said master has found that no credit

should be made by the said Walker or charge to him for the property known as the Chittenden farm, conveyed to him, and (twelfth) which he sold for $24,000 which should have been found to be in full payment of all the expenditures made by said Walker on account of said road, or litigation.

Thirteenth. For that the same master finds that the payment to said Walker of $10,000 for becoming surety upon a bond of indemnity was a fair and reasonable compensation for so doing. Such finding not warranted by either the law or evidence as a proper charge.

Fourteenth. For that said master allows the said Walker $10,000 for moneys paid to certain solicitors, which is not a proper charge or allowance. No vouchers therefor.

Fifteenth. For that said master allowed said Walker $2,000 in bonds instead of coupons which had been cut off, and which is no proper credit.

Sixteenth. Because said findings are contrary to the evidence, and to law and equity. Therefore complainant excepts."

The only question in this case is, whether the Circuit Court erred in overruling those exceptions.

That the court might have taken the course pursued in Mayhew v. Brettingham, Cooper's Chancery Reports, 43, may be conceded, and yet the not doing so when not asked, is not error; but to sustain the exceptions would have been to disregard that usage and practice which I have attempted to show has the force and effect of statute law.

It is idle to say that "it is the lack of evidence to sustain the master's report that justifies the exceptions, one and all. It was impossible to point out what does not exist." The less evidence there may be to sustain the report, the more quickly and briefly might the master have stated it, and the more clearly would the lack have appeared.

There is no error, and the decree dismissing the bill of the appellant is affirmed.