THE PEOPLE *ex rel.* The Chicago Bar Association, Relator, *vs.* WILLIAM E. KEELEY, Respondent.

*Opinion filed April 20, 1916.*

1. DISBARMENT—*exception to legal conclusion of the commissioner is unnecessary.* If the commissioner appointed to take the testimony in a disbarment proceeding states all the facts correctly but is mistaken as to the legal consequences of those facts it is not necessary to except to his legal conclusions.

2. SAME—*what does not excuse conduct of an attorney.* An attorney who accepts a fee to bring a suit and who deceives his client by representing that the suit has been brought is not justified in refusing to return the fee on demand because of any reason he may have had for not bringing the suit.

3. SAME—*what conduct by attorney is ground for disbarment.* An attorney who represents to his co-surety on a forfeited bail bond that he has gathered together the greater part of the money to pay the judgment and who induces his co-surety to advance the remainder as a loan in order to pay off the judgment but who appropriates the money so obtained to his own use and never pays the judgment or any part thereof, is guilty of such unprofessional conduct as warrants his disbarment.

ORIGINAL information to disbar.

JOHN L. FOGLE, for relator.

WILLIAM E. KEELEY, *pro se.*

Mr. JUSTICE DUNCAN delivered the opinion of the court:

An information of three counts was filed by the Chicago Bar Association to the April term, 1915, of this court, charging respondent, William E. Keeley, of Cook county, with unprofessional, dishonorable and criminal conduct, and praying that his license as an attorney and counselor at law be revoked and canceled and that his name be stricken from the roll of attorneys of this court. Respondent filed his answer to the information, and Wirt E. Humphrey, as commissioner, took and reported the evidence under all the counts. He reported that in his judgment the first and third counts of the information were sustained by the evidence, and that the proof under said counts shows that respondent was guilty of unprofessional and dishonorable conduct as an attorney. He also reported the leading evidential facts under the second count. The respondent filed exceptions to the findings by the commissioner as to the first and third counts but no exceptions were filed by either party as to the second count.

The first count charges that in March, 1906, respondent was attorney for John Barber, who had been indicted by the United States grand jury for unlawfully having in his possession a mold for counterfeiting quarter-dollar coins, and that respondent became, and induced Joseph M. Reardon to become, a surety on a $1000 bail bond for Barber for his appearance in the United States district court in May, 1906, to answer to said indictment. Barber disappeared, and in May, 1906, judgment was rendered in said court for $1000 against said sureties. On notice to Reardon of said judgment Reardon saw the respondent about it, and again, as he had when said bond was executed, the respondent assured Reardon that he would look after it and save him harmless; that the respondent thereafter, verbally and in writing, represented to Reardon that he (the

respondent) would be compelled to pay about $1100 to settle the amount due and that he had gotten all the money together except about $300, and asked Reardon to procure for him that sum so he might settle the matter; that finally the respondent represented to Reardon that he had gotten all the money together except $200, and Reardon thereupon, at the respondent's request, about June 1, 1906, gave him $200 upon the representation that it was to be applied on said judgment with enough more in the respondent's hands to pay off the judgment; that said representations were false, and that neither said sum, nor any part thereof, was ever applied or paid on said judgment but was retained by the respondent and converted to his own use and no part of said judgment was ever paid by the respondent. The charges in this count are sustained by the testimony of Reardon, a man of the age of seventy-nine years, and of Mrs. Marion Josephine Reardon, his wife, who is sixty-nine years old. Their testimony was positively denied by the testimony of the respondent, who testified very positively that he never got that sum or any other sum of money from Reardon to pay on that judgment, and those three were the only witnesses on that charge. The Reardons are corroborated by three letters written to Reardon by the respondent. The first, of date March 8, 1906, reads as follows: "It is going to cost me nearly $1100 to settle that bond and costs. I have $700 on hand and can scrape another hundred soon. I wish, if possible, that you would see your friend Mr. Clark and try to get $300 for ninety days. I will sign the note and guarantee to pay it within that time so that it will never trouble you nor cost you a cent. I would like to close the matter up quickly. My fees from cases that will be settled within the next sixty days will amount to over $1000. Try to help me out and let me hear from you." No note was signed by respondent, but the Reardons testified that they paid him $200 and no note was asked of him, and that he never has re-paid the money although a written demand was

273 — 7

made on him for it January 25, 1915. A few circumstances are referred to by respondent which he claims corroborate him; that Reardon waited for about nine years before making demand for his money or any noise about it; that he made no note as mentioned in his letter; that no receipt was taken for the money and he was never sued for it. The evidence of respondent proves one point in the case, and that is that he did not at the time have the $700 spoken of in his said letter. The evidence also shows that the judgment never has been paid by anyone, and respondent's testimony leads to the conclusion that the agents of the government had abandoned the idea of collecting the judgment because they had no sufficient evidence to convict Barber of the crime for which he was indicted. We can see no good reason why those two aged witnesses should be considered as perjurers by their testimony, and they are if their testimony in this case is false. They were separated before testifying, at respondent's request, and no discrepancy appears in their evidence. The exceptions of respondent are overruled as to this count.

The second count charges that in 1912 Hannah Sorenson retained respondent as an attorney to bring suit to annul the marriage of her son, Harry Sorenson, after she had stated the facts concerning said matter and had been advised by him upon said statement and he had agreed at a total cost of $50, including his attorney fee, to prosecute said suit; that in accordance with their agreement she advanced him the sum of $25, for which he then gave her his receipt and agreed to wait for the remainder of said sum until a decree was entered in the cause; that he failed to file said suit at any time, and in response to repeated inquiries falsely represented to her that the reason said cause did not come up for trial was because the courts were so busy; that she continued to call on him from week to week for six or eight months, and that she continued to be put off by him by one excuse or another until she was finally compelled to, and

did, employ another attorney; that being advised that no
suit had been begun she notified respondent thereof and de-
manded a return of her money by him, and that he failed
to re-pay her her money but retained it and never has re-
paid it or in any way looked after such suit. The commis-
sioner in his findings recites the evidential facts which sup-
port the charge in this count in every particular, and then
adds: "For aught that appears from the evidence (re-
spondent) may have supposed that the minority of the son
was an adequate ground for a dissolution of the marriage.
Upon further inquiry, however, according to his testimony,
he learned that the young wife was about to become a
mother, and thereupon he concluded not to commence a suit
for dissolution of the marriage. Whether he should have
returned to the mother all or any part of the $25 does not
appear." The foregoing conclusion of the commissioner is
very apparently an erroneous conclusion of law, as it is un-
warranted by the evidential facts found and recited by the
commissioner. The facts found and recited, as aforesaid,
were not objected to in any way by relator or respondent.
The relator argues that the facts found and recited sustain
the second count. The respondent has filed no brief or
argument, except that in the abstract he has supplemented
his exceptions under the first and third counts with a few
lines of argument. Under this showing of the record the
court must hold that the evidence sustains the second count.
Where the commissioner states all the facts correctly but
is mistaken as to the legal consequences of those facts it is
not necessary for the dissatisfied party to except to such
conclusions. (*Hurd* v. *Goodrich,* 59 Ill. 450; *Clavey* v.
*Schnadt,* 272 id. 464.) Whether or not the respondent cor-
rectly understood the law of the case he agreed to bring,
or whether or not the son desired the suit brought, or
whether or not respondent learned the wife was soon to be-
come a mother, were not facts demanding an accurate de-
termination from the evidence in order to correctly deter-

mine whether or not respondent is excused from deceiving his client into believing he had brought the suit and in refusing to bring it, or re-pay her her money on demand after she learned he had not brought the suit.

The third count is similar in all respects to the second count. It is supported by the evidence of Bessie B. Lassers, who testified that in 1911 she employed respondent on a contingent fee to prosecute a suit for her minor son against the Lill-Robinson Coal Company for an assault on him by a driver for the coal company; that he agreed to bring the suit and told her that it would be necessary for her to pay $13 to him to defray court costs of filing the suit, and that she accordingly paid that sum to him; that he failed to institute the suit and led her to believe that said suit had been instituted, and that she did not learn that it was not instituted until October, 1914; that she then demanded that he re-pay the money paid him, but he failed to do so and converted the same to his own use. He stated upon the hearing before the commissioner that he would refund the money to her and also the $25 he received from Mrs. Sorenson. He has finally paid both these sums after the evidence was taken in this case. The $200, however, he refused to pay to Reardon unless he would sue for the same and recover therefor a judgment. Respondent did not deny that he received the $13 from Mrs. Lassers, and admitted he did not bring the suit and that he failed to re-pay her the money when she demanded payment of it, but claims that he told her to bring in her receipt showing she had received it and that then he would pay her. We think the evidence sustains this count and respondent's exceptions are overruled as to this count.

The charge that the respondent has been guilty of unprofessional and dishonorable conduct as an attorney is fully sustained by the evidence in this record, and we are of the opinion that the rule in this case ought to be made absolute.

*Rule made absolute.*