PATRICK H. HEFFRON *et al.*

*v.*

LYMAN J. GAGE.

*Filed at Ottawa January 16, 1894.*

1. MORTGAGES AND DEEDS OF TRUST—*declaring the whole debt due for default in payment of notes first maturing.* Where a mortgage or deed of trust provides that in case of default in the payment of any installment of interest or any portion of the principal debt the entire debt, at the option of the mortgagee or the holder of any of the notes secured, shall become due, no particular form of expression is necessary to be used for the purpose of declaring such option.

2. In this case, when the first series of notes secured by a deed of trust became due and payment was not made, three of the holders of the notes called on the trustee and informed him that they wanted their money. They then prepared a notice, in writing, addressed to him as trustee, in which they called on him to foreclose the deed of trust because of default of payment of the principal debt: *Held,* that while such notice did not formally declare the option to have the entire debt declared due, it was sufficient to show an intention to declare the entire debt due.

3. There are many authorities which hold that no formal notice is required of the election of the holder of notes secured by mortgage to have the entire debt mature for any default on the part of the debtor, and that the commencement of a suit to foreclose the mortgage is sufficient to show the election of the creditors to declare the debt due before the maturity of the notes on their face.

4. RECEIVER—*appointment does not vest title to the debtor's property.* In this State there is no statute conferring title to property in a receiver who may be appointed by a court of equity, and in the absence of such a statute a receiver can only acquire title by a conveyance. The mere order of appointment does not vest title to the property.

5. A receiver, by his appointment, is authorized to take and hold possession of property under the control and direction of the court, and the general practice seems to be, when necessary for the recovery or possession of personal property by him, that the defendant will be required to assign the property by proper written assignment; and when it is necessary to execute leases or bring ejectment for real estate, an assignment or conveyance to the receiver is necessary. If he is merely authorized to sell property like a master, he takes no title.

6. ATTORNEY'S FEE—*allowance, on bill to foreclose mortgage.* It is well settled in this State, that where a mortgage provides for the allowance of a solicitor's fee on its foreclosure, to be paid out of the proceeds arising from the sale of the mortgaged property, it is not error for the court to decree the payment of a solicitor's fee.

7. A deed of trust was foreclosed, which contained a provision that in case of default in payment, and of the filing of a bill to foreclose the same, the mortgagors should pay all costs and a solicitor's fee of $1000, which was declared should be a lien on the mortgaged premises. On bill to foreclose, the complainant introduced evidence tending to prove, in view of the services required in a case of such character and magnitude, what was a reasonable fee. The court, in its decree, directed the payment of a solicitor's fee of $1000 : *Held,* no error in allowing such fee.

8. Where the parties to a trust deed stipulate therein the amount that shall be paid by the grantors as an attorney's or solicitor's fee on default of payment of the mortgage indebtedness and the filing of a bill to foreclose, no reason is perceived why they should not be concluded by the amount of such fee so agreed upon, unless it is apparent that the amount was inserted as a cover for usury, or is unreasonable or excessive.

9. PARTIES—*in chancery, generally.* It is a settled general rule in equity that all persons should be made parties to the bill who have a substantial legal or equitable interest in the subject matter of the litigation, and who are to be materially affected by the decree to be rendered.

10. SAME—*on bill to foreclose mortgage—receiver of mortgagee's property.* On a bill to foreclose a mortgage or deed of trust, a receiver of one mortgagor appointed on a bill by that mortgagor against another, to wind up and settle a partnership, where no conveyance of the mortgagor's property is made to the receiver, will not be a necessary party to a bill to foreclose.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

Messrs. OSBORNE BROS. & BURGETT, for the appellants :

Gage had no authority to file a bill for foreclosure. *Bank* v. *Bank,* 9 Wis. 57 ; *Brodribb* v. *Tibbetts,* 38 Cal. 6.

The bill does not allege any election on the part of any note holder to have all the notes declared due. In the absence of such an allegation a decree for the foreclosure for the whole

indebtedness can not be supported. *Stelzich* v. *Weidel,* 27 Ill. App. 177; *Brusher* v. *Martin,* 34 id. 132; *Randolph* v. *Middleton,* 26 N. J. Eq. 543.

It was error to decree a sale of property for the payment of $1000 to Gage for an attorney's fee. The bill does not allege that it is a reasonable fee. *Soles* v. *Sheppard,* 99 Ill. 616.

Gage can not be allowed to recover a solicitor's fee not shown by the evidence to have been paid by him. *Soles* v. *Sheppard,* 99 Ill. 616; *Jevne* v. *Osgood,* 57 id. 340; *Insurance Co.* v. *Shields,* 12 Phila. 407; *Patterson* v. *Donner,* 48 Cal. 369; *Burns* v. *Scoggin,* 16 Fed. Rep. 734; *Munter* v. *Linn,* 61 Ala. 492; *Long* v. *Herrick,* 26 Fla. 356; *Mjones* v. *Bank,* 45 Minn. 335; *Voechting* v. *Grau,* 55 Wis. 312.

It was not shown that the attorneys had not an agreement for less than $1000 fees. *Martin* v. *Jamison,* 39 Ill. App. 248; *Rees* v. *Pelzer,* 1 id. 315; *Stinnett* v. *Wilson,* 19 id. 38; *Rosenthal* v. *Boas,* 27 id. 430; *Zibell* v. *Barrett,* 30 id. 112; *Jevne* v. *Osgood,* 57 Ill. 340.

In some of the States it is held that all stipulations for the payment of attorney's fees by the debtor, in whatever form such stipulations may be phrased, are absolutely void, as tending to oppression of the debtor and to encourage litigation. *Witherspoon* v. *Musselman,* 14 Bush, 214; *Dow* v. *Updike,* 11 Neb. 95; *State* v. *Taylor,* 10 Ohio, 278; *Shelton* v. *Gill,* 11 id. 417; *Spalding* v. *Bank,* 12 id. 544; *Martin* v. *Bank,* 13 id. 250.

In other States, agreements for the payment of "reasonable" attorney's fees by the debtor in case of foreclosure, will be enforced. But stipulations providing in advance for the payment by the debtor of a fixed sum are to be held to be against public policy, absolutely void, and wholly unenforcible. The reasons for so holding are forcibly stated in the following cases: *Vosburg* v. *Lay,* 45 Mich. 455; *Myer* v. *Hart,* 40 id. 455; *Bendly* v. *Townsend,* 109 U. S. 665; *Bank* v. *Sevier,* 14 Fed. Rep. 662; *Balfour* v. *Davis,* 14 Ore. 47; *Peyser* v. *Cole,* 11 id. 39; *Kimball* v. *Moir,* 15 id. 427.

In other States the courts will, under agreements by the debtor to pay a fixed sum as attorney's fees, allow the recovery of a reasonable sum as attorney's fees, not to exceed the amount stipulated for, nor to exceed what the plaintiff has paid, or become liable to pay, as an attorney's fee. But it must be shown by the evidence that the amount allowed by the court as attorney's fees is reasonable, and that plaintiff has paid, or become liable to pay, such amount as attorney's fees. *Patterson* v. *Donner,* 48 Cal. 369; *Burns* v. *Scoggin,* 16 Fed. Rep. 734; *Moran* v. *Gardemeyer,* 82 Cal. 96; *Munter* v. *Linn,* 61 Ala. 492; *Long* v. *Herrick,* 26 Fla. 356; *Voechting* v. *Grau,* 55 Wis. 312; *Wyant* v. *Pottorff,* 37 Ind. 512; *Mjones* v. *Bank,* 45 Minn. 335; *McAllister's Appeal,* 59 Pa. St. 204; *Daily* v. *Maitland,* 88 id. 384; *Lewis* v. *Bank,* 96 id. 86; *Woods* v. *North,* 84 id. 407; *Soles* v. *Sheppard,* 99 Ill. 616; *Jevne* v. *Osgood,* 57 id. 340.

There was no evidence that $1000 was the usual and customary charge for like services. To sustain the allowance of $1000 this should have been shown. *Reynolds* v. *McMillan,* 63 Ill. 46; *Jevne* v. *Osgood,* 57 id. 340; *Dorsey* v. *Cross,* 2 Ill. App. 533; *Stinnett* v. *Wilson,* 19 id. 38; *Rosenthal* v. *Boas,* 27 id. 430; *Rees* v. *Pelzer,* 1 id. 315.

It is a general rule in chancery that all persons interested in the subject matter of the litigation, whether it is a legal or an equitable interest, should be made parties, so that the court may settle all of their rights at once, and thus prevent the necessity of suits. *Willis* v. *Henderson,* 4 Scam. 13; *Wood* v. *Johnson,* 13 Ill. App. 548.

This rule is almost inflexible, and the court will never dispense with parties who are interested in the subject matter of the suit, without sufficient cause being shown in the bill. *Gilham* v. *Cairns,* Beecher's Breese, 164; *Herrington* v. *Hubbard,* 1 Scam. 569; *Whitney* v. *Mayo,* 15 Ill. 252; *Prentice* v. *Kimball,* 19 id. 320.

The receiver was a necessary party.   Beach on Receivers, sec. 192;  2 Jones on Mortgages, (4th ed.) sec. 1438 a;  High on Receivers, sec. 443;  *Kirkpatrick* v. *Corning,* 38 N. J. Eq. 234;  *Tillinghart* v. *Champlin,* 4 R. I. 173.

Messrs PECKHAM & BROWN, for the appellee:

The allegations of the bill are sufficient to show the right of Gage to file the bill.   2 Jones on Mortgages, secs. 1452, 2182; *Hunt* v. *Keech,* 3 Abb. Pr. 555;  *Buchanan* v. *Life Ins. Co.* 96 Ind. 510;  *Harper* v. *Ely,* 56 Ill. 179.

If the bill was defective in not stating explicitly that certain holders of notes elected that all the notes should become due immediately, yet inasmuch as no objection was made to it on this ground before final decree, no such objection will be entertained on appeal.   1 Barbour's Ch. Pr. 396;  *Lusk* v. *Cassell,* 25 Ill. 209;  *Herrick* v. *Swartwout,* 72 id. 340;  *Railway Co.* v. *O'Connor,* 115 id. 254;  *Railroad Co.* v. *Morgenstern,* 106 id. 216;  *Wills* v. *Chaflin,* 92 U. S. 145;  *Clarke* v. *Boyle,* 51 Ill. 104;  *Brown* v. *Lowell,* 79 id. 484;  *Beekman* v. *Frost,* 18 Johns. 544.

The receiver was not a necessary party.   Wilton on Foreclosure, sec. 115;  Jones on Mortgages, sec. 1394;  Beach on Receivers, secs. 209, 210.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Lyman J. Gage, to foreclose a trust deed executed November 10, 1888, by James J. Gore and Patrick H. Heffron, in which they conveyed certain property to Gage, as trustee, to secure an indebtedness of $181,536.89, evidenced by certain promissory notes payable to the order of H. J. Milligan, the Crane Elevator Company, the Western Electric Company, Bramhall, Deane & Co., the Excelsior Electric Light Company, the Berkey & Gay Furniture Company, W. P. Rend & Co., Melchior Bros. Furniture Company, Joseph Downey, E. Baggot, Winslow Bros.

& Co., Hennessey Bros., John Davis & Co., C. W. Tripp & Co., Vierling, McDowell & Co., William E. Dee, Sherman & Flavin, the Wight Fireproofing Company, the Chicago Carpet Company, J. H. Rice & Co., F. L. Charnley, Kellogg, Johnson & Bliss, Kniseley & Miller Bros., T. W. Wilmarth & Co., and Tom Donnelly, respectively, said notes being more fully described in said trust deed, which is made an exhibit to the bill.

The trust deed contained the following provision: "If default be made in the payment of the said promissory notes, or of either or of any part thereof, or the interest thereon, or any part thereof, at the time and in the manner above specified for the payment thereof, * * * then, in such case, the whole of said principal sum and interest secured by the said promissory notes shall thereupon, at the option of the legal holder or holders, or any or either thereof, become immediately due and payable; and upon the application of the legal holder of said promissory notes, or either of them, it shall be lawful for the said grantee, * * * in his own name or otherwise, to file a bill or bills, in any court having jurisdiction thereof, against the said party of the first part, * * * to obtain a decree for the sale and conveyance of the whole or any part of said premises, for the purposes herein specified, by said party of the second part, as such trustee, or as special commissioner, or otherwise, under order of court, and out of the proceeds of any such sale to first pay the costs of such suit, all costs of advertising, sale and conveyance, including the reasonable fees and commissions of said party of the second part, or person who may be appointed to execute this trust, and $1000 attorney's and solicitor's fees, * * * then to pay the principal of said notes, whether due and payable by the terms or the option of the legal holder thereof, and interest due on said notes up to the time of such sale, rendering the overplus * * * unto the said party of the first part."

William Fleming having purchased three of the promissory notes of $2766.66 each, which were originally given to Joseph Downey, he and H. J. Milligan and James H. Rice, who also held notes secured by the mortgage, served the following notice on the trustee:

"Chicago, Ill., *Nov. 15, 1889.*

"*To Mr. Lyman J. Gage, Trustee:*

"We, for ourselves, and on behalf of the creditors interested in the trust deed on the property known as Gore's Fire-proof Hotel and the Open Board of Trade Building, request that (if sufficient default has been made, as we believe,) the deed should be foreclosed. We make this request because of default in the payment of the principal, and, as we believe, for the benefit of everybody concerned in the trust deed.

W. Fleming,<br>H. J. Milligan,<br>James H. Rice."

In connection with the above notice, it appears from the evidence that when default was made in the payment of the notes which became due on the 10th day of November, 1889, Milligan, Rice and Fleming called on Gage and informed him they wanted their money. Gage said to them, "Reduce your request to writing," which was done. After receiving notice the bill was filed. Gore and Heffron, the mortgagors, and the holders of notes secured by the mortgage, were made defendants to the bill. Heffron put in an answer to the bill, and Richard M. Hennessey, a creditor secured by the trust deed, also answered the bill. The cause was referred to the master to take proof. The master's report was filed and a decree of foreclosure entered. The decree, among other things, directed the payment to the trustee, Gage, of $500 for his own services, and also an attorney's fee of $1000, with interest from the date of the decree. On an appeal to the Appellate Court it was there held that the allowance of $500 for services to Gage, and interest on that sum and the attorney's fee, was

erroneous. The court therefore modified the decree by striking out the $500 allowed to the trustee, and the interest on the solicitor's fee, and in all other respects the decree was affirmed. To reverse the judgment of the Appellate Court the two defendants, Heffron and Hennessey, have appealed to this court, and rely upon the following grounds to reverse the judgment of the Appellate Court: First, Gage had no authority to file a bill for foreclosure; second, it was error to decree a sale of the property for payment of the whole indebtedness; third, it was error to decree a sale of the property for the payment of $1000 to Gage for an attorney's fee; fourth, the decree found that none of the persons alleged in the answers of Heffron and Hennessey to be necessary parties to this suit, were necessary parties, and this was error.

The notes described in the trust deed were all dated November 10, 1888, a part thereof due in one year, a part in two years and a part in three years from date, with interest payable semi-annually on each note. The makers of the notes failing to make payment of the notes which became due November 10, 1889, three of the holders of notes which had become due prepared and caused to be delivered to the trustee the notice heretofore set out. It is, however, insisted in the argument, that there is no allegation in the bill that any note holder had elected to declare the whole indebtedness due for a default in payment of any note, and there is no evidence to sustain such an allegation,—that the evidence does not show that any note holder ever made application to Gage to file a bill to foreclose the deed of trust.

It is alleged in the bill that the deed of trust provides that in default of payment of either of said notes or interest when due, the whole of the principal sum and interest shall become due and payable, at the option of the legal holder of any or either of said notes, and that on the application to complainant by the legal holder of either of said notes, it should be lawful for complainant, as trustee in said trust deed, to file

a bill for the foreclosure of said trust deed, and to obtain a decree for the sale of said property for the payment of said notes; that the whole of the principal sum in said notes, and the interest thereon, has become due and payable by reason of non-payment of the first series of said notes payable November 10 to 13, 1889; that several of the holders of said notes have requested complainant, as provided in said trust deed, to foreclose said trust deed and obtain a decree of sale herein; that there is now due and owing on said notes, to the holders thereof, $123,861.27, with interest from November 10, 1888. These allegations, in connection with the deed of trust, which was made a part of the bill, we regard ample, so far as the bill is concerned, to authorize a decree, and the proof to sustain the allegations of the bill we think fully sustained the bill.

Where a mortgage or deed of trust provides that in case of default in the payment of any installment of interest or any portion of the principal debt, the entire debt, at the option of the mortgagee, shall become due and payable, no particular form of expression is necessary to be used for the purpose of declaring such option. (*Harper* v. *Ely,* 56 Ill. 182; 2 Jones on Mortgages, sec. 1182.) Here, when the first series of notes became due and payment was not made, three of the holders of notes called on the trustee and informed him that they wanted their money. They then prepared a notice, in writing, addressed to him as trustee, in which they called upon him to foreclose the deed of trust because of default in payment of the principal debt. They did not declare, in so many words, that on account of a default in the payment of a part of the debt they elected to declare the whole debt due, but such was the import of what was said and done. Indeed, there are many authorities which hold that no formal notice is required; that the commencement of an action to foreclose the mortgage is sufficient to show the election of the mortgagee to declare the debt due. 2 Jones on Mortgages, sec.

1182; *Buchanan* v. *Berkshire Life Ins. Co.* 96 Ind. 510; *Hewitt* v. *Dean*, 25 Pac. Rep. 753.

The next error complained of is the allowance of a solicitor's fee for foreclosing the deed of trust, of $1000. The trust deed provides that the trustee, in case of default, etc., shall file a bill against the said party of the first part, to obtain a decree for the sale and conveyance of the whole or any part of said premises, etc., and out of the proceeds of any such sale to first pay the costs of such suit and $1000 attorney's and solicitor's fees, and also all other expenses of this trust, etc., and then pay the principal of said notes, etc. The deed contains a further provision that the grantees shall pay all costs and attorney's fees incurred in any suit in which the trustee or holders of the notes may be parties by reason of being a party to the deed of trust, and the same shall be a lien on the premises, and may be included in any decree ordering the sale of the premises. The complainant set up in the bill, and claimed, that in addition to reasonable costs and charges, under the clause in the deed he was entitled to $1000 for solicitor's fees. Evidence was introduced by the complainant tending to prove that in view of the services required in a case of this character $1000 was a reasonable charge. Whatever may be the rule elsewhere, it is well settled in this State that when a mortgage provides for the allowance of a solicitor's fee in foreclosure of a mortgage, to be paid out of the proceeds arising from a sale of the mortgaged property, it is not error for the court to decree the payment of a solicitor's fee, as was done in this case. (*Clawson* v. *Munson*, 55 Ill. 394; *McIntire* v. *Yates*, 104 id. 491; *Haldeman* v. *Life Ins. Co.* 120 id. 390; *Telford* v. *Garrels*, 132 id. 550.) Here the parties stipulated in the deed the amount that should be paid in default of the payment of the mortgage debt, and no reason is perceived why they should not be concluded by the amount so agreed upon in the mortgage, unless it appeared that the amount was inserted as a cover for usury, or is unreasonable

or excessive. It may be that in fixing the amount of a reasonable fee, the examination should be directed to what is customary for such legal services, or what is the usual charge, as held in *Reynolds* v. *McMillan*, 63 Ill. 47. But there was no such departure from the rule indicated, in this case, as should work a reversal. The defendants had ample opportunity to cross-examine the witnesses, and fully interrogate them as to the customary or usual charges, and we do not see that any injury was done by the manner in which the examination was conducted.

In the answers of Heffron and Hennessey it was set up, that after the execution of the trust deed Gore filed a bill against Heffron, in the circuit court of Cook county, for a dissolution and settlement of a partnership between them, which involved the property named in the trust deed; that under Gore's bill a receiver was appointed; that the receiver went into possession of the property and let portions of it to certain tenants. The receiver and the tenants were not made parties to the bill, and it is claimed that the court erred in rendering a final decree in their absence. It may be regarded as a general rule, in equity, that all persons should be made parties who have a substantial legal or equitable interest in the subject matter of the litigation, and who are to be materially affected by the decree to be rendered. (*Prentice* v. *Kimball*, 19 Ill. 322.) The inquiry presented is, what legal or equitable interest, if any, the receiver who was appointed in *Gore* v. *Heffron* had in the property described in the deed of trust.

The order appointing the receiver was as follows: "On motion of the complainant, the defendant consenting thereto, it is ordered that Nicholas D. Loughlin be and he is hereby appointed receiver of the property interests, things in action and effects belonging to the property in controversy in this suit, known as Gore's Fire-proof European Hotel, and that he be vested with all the rights of a receiver in chancery upon

his filing a bond in the penal sum of $20,000, to be approved by this court, and that the said receiver be authorized to collect all rents accruing upon said premises, and all outstanding debts, and to conduct the business of keeping said hotel, and from the receipts thereof to pay such sums as may be necessary to discharge the current obligations incurred by him in the management thereof, and also to pay all obligations incurred by James H. Rice, the late receiver remaining unpaid at the time of the delivery of the property of said estate, to July 16, 1889."

There was no conveyance of the property involved, to the receiver, and his interest, if he had any, grew out of the order under which he was appointed. We have no statute conferring title to property in a receiver who may be appointed by a court, and in the absence of a statute we think it is well settled that the receiver could only acquire title by a conveyance,—that the mere order of appointment does not vest title to the property.

Beach on Receivers, in the discussion of this subject, says (sec. 209): "Where actions are brought to try the title to specific property, or the business of a partnership is to be wound up or a corporation to be formally dissolved, and it is, for any reason, proper or necessary to preserve the property from waste or deterioration pending the action, it is the usual procedure to apply to the court for the appointment of a receiver, whose duty it shall be to take into his possession all the property which is involved in the controversy or other proceeding, and preserve it, subject to whatever final decree may be made. The title of such a receiver is clearly and concisely defined by ANDREWS, J., in *Keeney* v. *Home Ins. Co.:* 'A receiver *pendente lite* is a person appointed to take charge of the fund or property to which the receivership extends while the case remains undecided. The title to the property is not changed by the appointment. The receiver acquires no title, but only the right of possession, as the officer of the court. The title

13—149 ILL.

remains in those in whom it was vested when the appointment was made. The object of the appointment is to secure the property pending the litigation, so that it may be appropriated in accordance with the rights of the parties as they may be determined by the judgment in the action.'" And in section 210: "So where an action was brought to dissolve a partnership, and one of the co-partners was appointed a receiver *pendente lite* of the partnership property, it was held that the appointment of the receiver wrought no change in the title to or possession of the property, and that, therefore, a policy of insurance thereon, containing a condition that a sale or transfer or any change in the title or possession would invalidate the policy, was not thereby avoided. And where a receiver is appointed over the personal estate, and of the rents and profits of the real estate, of a husband, at the instance of and for the benefit of the wife suing for a limited divorce, and to compel the payment or security of alimony granted by the court, the title of the realty does not vest in the receiver, who is entitled to the possession only, and who has no other powers than those specially conferred on him by the court."

In *Union Trust Co.* v. *Weber*, 96 Ill. 346, this court held that a receiver, by his appointment, was authorized to take and hold possession of property under the control and direction of the court, and the general practice seems to be, when necessary for the recovery or preservation of personal property by him, the defendant will be required to assign the property by proper written assignment, and where it is necessary to execute leases or bring ejectment for real estate, an assignment or conveyance to the receiver is necessary. If he is merely authorized to sell property like a master, he takes no title.

In view of the authorities, we think it is plain that the appointment of a receiver in the case of *Gore* v. *Heffron* vested no estate or interest in the premises in the receiver. He was a mere custodian pending litigation. His possession of the

property was merely the possession of the court. (High on Receivers, secs. 134, 135.) The receiver had no rights to assert had he been made a party to the bill, nor did the tenants who held possession under him occupy any better position. Neither he nor they had any equity of redemption in the premises. Indeed, they had no substantial legal or equitable interest in the premises, and we do not think they were necessary parties to the bill.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*