## Albert J. Stone and Mary S. Stone v. Albert M. Billings and Cornelius K. G. Billings, Trustee.

1. FRAUD—*Representations as to a Legal Effect.*—A false representation as to the legal effect of a contract is not a fraud in law.

2. FORECLOSURE—*Partial Releases—Tender After Default.*—Under a trust deed, conditioned that the whole debt secured might be declared due and the deed foreclosed upon thirty days default in the payment of interest, taxes, etc., and containing a provision for partial releases, a tender to obtain such a release *pendente lite*, forty-five days after a bill to foreclose, and while grantors were in default in the payment of interest, taxes, etc., is unavailing.

3. EQUITY PRACTICE—*Exceptions to the Master's Report.*—Exceptions to the master's report must be specific and point out the evidence upon which the conclusion excepted to is based. McMannomy v. Walker, 63 Ill. App. 259.

4. SOLICITOR'S FEES—*In Foreclosure Suits.*—Under a trust deed providing for " a reasonable solicitor's fee to be fixed by the court," in fixing such amount, the examination should be directed to what is customary for such legal services where contracts have been made with persons competent to contract, and not what is reasonable, just and proper for the solicitor in the particular case. The inquiry should be, not what an attorney thinks is reasonable, but what is the usual charge.

Foreclosure, of trust deed. Error to the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed March 31, 1896.

FRANK J. CRAWFORD and C. D. F. SMITH, attorneys for plaintiffs in error.

An agreement to release any specified portion of the mortgaged premises upon the payment of a specified amount confers upon the mortgagors the right to have such portion released upon the payment of the amount. And if the mortgagors, or either of them, pay or tender the specified amount, there can be no foreclosure decree of sale of the parcel so agreed to be released. Gould v. Equity Banking Co., 136 Ill. 60.

Where there is an agreement in the mortgage to release specified portions of the mortgaged premises on being paid

therefor certain specified sums of money, the mortgagors or their grantees are entitled to a release of such specified portions upon the payment or tender to the mortgagee of the specified amount, *without interest thereon.* Clark v. Fountain, 155 Mass. 464; S. C., 144 Mass. 287.

WINSTON & MEAGHER, attorneys for defendants in error; JAMES F. MEAGHER and SILAS H. STRAWN, of counsel.

Where a party of mature years and sound mind, being able to read and write, deliberately signs a written instrument without informing himself as to the nature of its contents, he can not be permitted to allege, as a matter of defense, his ignorance of that which it was his duty to know, where the means of information are within immediate reach, of which he neglects to avail himself, unless he was induced to do so by willfully false statements of the party procuring his signature. State Nat'l Bank of Springfield v. Butler, 149 Ill. 585; Linington v. Strong, 111 Ill. 160; Wheeler & Wilson v. Long, 8 Ill. App. 463.

The right to obtain a release by a payment of the sums set opposite the property in the schedule expired when they made default in the terms of the trust deed. Chrisman v. Hay, 43 Fed. Rep. 552; Reed et al. v. Jones et al., 133 Mass. 116; Werner v. Tuch, 52 Hun (N. Y.), 269; Pierce v. Kneeland, 16 Wis. 706.

A tender of debt, secured by a mortgage made after default, must be kept good in order to discharge the mortgage. Crain et al. v. McGoon, 86 Ill. 431; Aulger v. Clay, 109 Ill. 487; Blain v. Foster, 33 Ill. App. 298.

Where the tender is relied on, the bill must aver a tender and offer to bring the money into court. D'Wolf v. Pratt et al., 42 Ill. 215; Mohn v. Stoner, 11 Iowa 30.

MR. PRESIDING JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

The defendants in error filed their bill to foreclose a trust deed in the nature of a mortgage executed by the plaintiffs in error, who are husband and wife, to secure, with a com-

paratively small exception, a debt already in judgment against the plaintiffs in error, for which a new note was given. It is doubtless true that the debt was originally wholly that of the husband, and that she might have procured the vacation of the judgment so far as it affected her, so that in executing the new note and the deed, she only became surety for him; yet her charge of fraud is not strengthened by that relation. Edwards v. Schoeneman, 104 Ill. 278. The note was payable on or before three years after March 1, 1894, with semi-annual interest. When both considered, the note and deed provided that upon thirty days default in the payment of interest or taxes, etc., the whole might be declared due, and the deed foreclosed. The fraud she charges is that she was told that the note gave three years time. At the most, that was but a representation as to legal effect; not of fact. Besides, it is true, no one would expect a creditor to wait three years with no interest, and suffer his security to vanish by tax sales, without any provision for his safety. Had the plaintiffs paid the interest, taxes, etc., they would have had three years.

The other complaint as to the deed itself is, that it contains provision for partial releases with which the defendant refused to comply. The tender to obtain such release was made *pendente lite* forty-five days after the bill was filed, and the plaintiffs were very considerably behind, not to say in default, in the payment of interest, taxes, etc. Under such circumstances, no release could be claimed. Lane v. Allen, 60 Ill. App. 457.

The plaintiffs' excuse as to the default in the payment of interest and taxes is, that in their note was included $5,300 for which the defendants held the note of a third person, guaranteed by the plaintiff Albert, which being paid, it was agreed that the money should be used for the taxes and interest, and there being more than enough to pay the taxes, the surplus should be applied toward the September interest, and that the defendants agreed not to enforce the provisions of the deed as to that interest.

Now suppose that all true. Had the plaintiffs when, or

within a reasonable time after, the bill was filed, brought into court all arrears, and offered to pay them, it may well be that they would have been entitled to a stay of proceedings, partial release, and perhaps a dismissal of the bill with costs.

But doing nothing and offering to do nothing, they have no defense.

By judicial legislation a mortgage in New York is whittled down to a mere lien. Here it is, as between the parties, after breach at least, the legal estate. Hall v. Lance, 25 Ill. 277; Abney v. Austin, 6 Ill. App. 49.

Citing New York law as to the effect of the tender made is not to the point. Kortright v. Cady, 21 New York 343, and Jones v. Guaranty Co., 101 N. S. 622, involving New York law, are not authority in this State.

The thirteen exceptions filed to the master's report point to no evidence upon which the master based his conclusions (McMannomy v. Walker, 63 Ill. App. 259), and if they did the abstract is barren. Bishop v. Loewus, 63 Ill. App. 351.

We do not look beyond the opening brief of the plaintiffs for reference to errors in the decree. Ætna Iron Works v. Owen, 62 Ill. App. 603.

The decree of foreclosure is affirmed.

MR. JUSTICE SHEPARD.

It is to me a matter of regret that there has been such a failure by the plaintiffs in error to observe well-established rules, as to preclude this court from, as I think, reversing the decree, at least in part, for what I regard were material errors, by including in the foreclosure decree the attorney's fee of $500, that was embraced in the judgment at law entered by confession, and what I regard as an excessive allowance of $7,500, in addition, for solicitor's fees in the foreclosure suit.

The authority to allow any solicitor's fee in the foreclosure suit was conferred by the terms of the trust deed, which provided that out of the proceeds of the sale there should be paid, among other things, " reasonable solicitor's fees to be fixed by the court."

The evidence upon which the allowance of $7,500 was made consisted in the testimony of one of complainant's counsel and two other practicing lawyers.

Complainant's counsel testified that in his opinion "the sum of $7,500 to $10,000 would be a fair, reasonable, just and usual charge," taking into consideration the amount involved, the responsibility, and the work necessarily done, etc.

The two other witnesses were duly qualified as such, and answered, with reference to the questions that were propounded to them, with reference to what were "fair, reasonable, usual and just charges," amounts which, it may be conceded, justified the finding of the master, if the amount alone were to be considered.

In Reynolds v. McMillen, 63 Ill. 46, it was said: "In fixing the amount of a reasonable fee, the examination should be directed to what is customary for such legal services where contracts have been made with persons competent to contract, and not what is reasonable, just and proper for the solicitor in the particular case. The inquiry should be, not what an attorney thinks is reasonable, but what is the usual charge."

And again in Heffron v. Gage, 149 Ill. 182 (at page 192), such rule is seemingly approved.

I do not think a mingling of what is " usual " with what is " fair and reasonable " in either question or answer, is an observance of the rule. What is " reasonable " is matter of opinion, while what is " usual " is matter of fact, and between the two the fact should prevail over the opinion. They are not subjects that can be properly embraced in either a single question or single answer, for they may be, and are likely to be, quite opposed to one another.

It was said in Stanton v. Embery, 93 U. S. 548 (at page 557), paraphrasing what was said in Vilas v. Downer, 21 Vt. 219: " Attorneys and solicitors are entitled to have allowed to them for their professional services, what they reasonably deserve to have for the same, having due reference to the nature of the service and their own standing in the profession for learning, skill and proficiency; and for the purpose of aiding the jury in determining that matter,

it is proper to receive evidence as to the price usually charged and received for similar services by other persons of the same profession practicing in the same court."

Conceding everything that might be urged with reference to the high standing of complainant's solicitors, my opinion, upon a consideration of all that appears, is that they should not have been allowed so large a sum for services in this case.

The record does not disclose services, either as to extent of time expended, or of complexity of legal questions, which justify what, in my opinion, based upon an experience of thirty-five years at this bar, is a most unusual charge for similar services. See, in this connection, the case of Blake v. Blake, 70 Ill. 618 (at page 628).

When authority is conferred, as was done by the mortgage in this case, to allow " reasonable solicitor's fees to be fixed by the court," some regard should, in my opinion, be paid to the equitable position, which, in the eye of the law, a mortgagor occupies, and especially where, as here, one of the mortgagors, Mrs. Stone, appears to have been a surety.

Full indemnity is all that a mortgagee has a right to as against the mortgagor.

I can not but think that had the inquiry of the court been in conformity to the truly equitable rule required in cases of fees for services in dissolving an injunction (Jevne v. Osgood, 57 Ill. 340)—" What has the defendant (complainant) paid, or become liable to pay, and is it the usual and customary fee for such services,"—I should have had no opportunity or inclination to indulge in this protest (for in the condition of the case as presented to us, my remarks are scarcely more than a protest), against a rapidly increasing tendency, not at all confined to this case, to fasten upon unfortunate mortgagees under the letter of their mortgage stipulations or contracts, fees that are oppressive and exorbitant, and which in my mind are in the nature of obnoxious penalties.

MR. JUSTICE WATERMAN.

I do not think that the mortgagee can, by any action upon

his part, enhance the amount which is to be allowed for solicitor's fees. The question is not what solicitors of the character and standing of those the mortgagee has employed should receive for the work done in the case, but what is the customary compensation of lawyers for such services; and I agree with Judge Shepard in saying that the question propounded to witnesses, which the court is to determine, is not what is fair, just or reasonable, but what is usual and customary. Affirmed.