### Estate of James E. McElroy v. Lincoln Brooke.

1.  ADMINISTRATION OF ESTATES—*Claims Allowed Under Sec. 67, Ch.
3, R. S.*—A contract to pay rent for the whole term is not made con-
ditional by a clause providing that upon certain contingencies the term
may be shortened, and it may be presented as a claim for allowance
and settlement against an estate under section 67, chapter 3, R. S.,
entitled " Administration of Estates."

Estate of James E. McElroy v. Brooke.

2. CONTRACTS—*Payment of Rent for Whole Term upon Abandonment of Premises.*—A lease provided that if the lessee should abandon or vacate the premises, the same might be relet by the lessor, for such rent and upon such terms as said lessor might see fit, and if a sufficient sum should not be thus realized after paying the expenses of such reletting and collecting to satisfy the rent thereby reserved, the lessee agreed to satisfy and pay all deficiencies. The lessee was placed in the hands of a receiver, who served upon the lessor a written notice, electing not to be bound by the terms of the lease, and renouncing it as an asset of the lessee. *Held*, that such act constitutes an abandonment of the premises by the lessee as contemplated by the lease, and that such a contract violated no principle of law, and was one which the parties were clearly competent to make.

**Claim in Probate.**—Error to the Circuit Court of Cook County; the Hon. ARBA N. WATERMAN, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Affirmed. Opinion filed November 28, 1902.

**Statement.**—Defendant in error filed his claim in the Probate Court of Cook County against the estate of James E. McElroy upon a guaranty in writing made by said McElroy in his lifetime, by which the latter guaranteed " the payment of the rent and the performance of the covenants " of a lease made to the Waukesha Hygeia Mineral Springs Company from defendant in error. The lease covered a period of five years from May 1, 1893, and the rent was payable in monthly installments.

November 30, 1894, the lessee, being in arrears for rent, delivered to the lessor the following assignment :

"November 30, 1894.

LINCOLN BROOKE :

We hereby assign and transfer to you any property that we may have in building No. 807, 61st St., being the east 50 feet of three lots west of alley between Langley and Champlain Aves., to secure you on amount now due or hereafter accruing on lease by us of said premises. This assignment to be canceled and surrendered any time rent is paid that is past due.

THE WAUKESHA HYGEIA MINERAL SPRINGS Co.,
By C. C., Prest, Sec. & Treas."

The lessee, though not at that time actively conducting its business upon the leased premises, had still remaining

there considerable personal property. With the idea, it is said, of strengthening the lessor's lien upon this property so assigned to him as security, the lessee delivered one of the keys of the building in which it was stored, retaining, however, other keys, and continuing as before to use such of the property as it desired, and to have unrestricted access to and control over the premises. The lessor made no use of the key in his possession and did not enter the premises.

About the middle of March following (1895) the lessee corporation was placed in the hands of a receiver, appointed by the U. S. Circuit Court; and the 27th of that month the said receiver, who had been the secretary and treasurer of the lessee, served upon the lessor a written notice, electing not to be bound by the terms of the lease, and renouncing it as an asset of the said Waukesha Hygeia Mineral Springs Company. To this notice defendant in error replied in writing, to the effect that he would not consent to a surrender of the lease; but inasmuch as the said company had abandoned and vacated the premises, he, the lessor, would endeavor to relet the same, but should hold the company, the receiver and the guarantor on said lease liable, " not only for the back rents still unpaid, but for the future rents or deficiencies of rent under the terms of such lease."

At an interview about this time between defendant in error and the receiver, the latter stated that he and his lawyer had decided that the lessor's lien on the personal property which the company had assigned to said landlord was worthless, and the receiver threatened to take possession of the property. He caused to be put up on the door of a barn upon the premises a notice of his appointment as receiver, stating that as such he was in possession of all the property of the company. Defendant in error then bought a padlock and fastened the door of the barn which contained the personal property covered by the foregoing assignment of November 30th.

The receiver thereafter filed a petition in the U. S. Circuit Court claiming to be entitled to possession of this personal property. Defendant in error answered, and the

result of the proceedings was that the receiver was ordered to pay the lessor $750, in discharge of rent accrued to May 1, 1895, and in satisfaction of his lien on the property, which was then turned over to the receiver.

April 8, 1895, shortly after the abandonment of the leased premises by the receiver, the lessor, acting, it is claimed, under the seventh covenant of the lease, relet a part of the premises in question for a term commencing May 1, 1895, and ending April 30, 1898, the date of the expiration of the lease under which this controversy arises. Later the remainder of the premises were relet from December 1, 1898, for the remainder of the unexpired term. The rent received from the new tenants was credited upon the original lease, leaving, however, a deficiency which it is the purpose of this proceeding to recover from the guarantor. Following is the seventh clause of the lease:

" Seventh.   If said party of the second part shall abandon or vacate said premises, the same may be relet by party of the first part, for such rent and upon such terms as said first party may see fit, and if a sufficient sum shall not be thus realized, after paying the expenses of such reletting and collecting, to satisfy the rent hereby reserved, the party of the second part agrees to satisfy and pay all deficiencies."

On the back of said lease is the guaranty as follows:

" For value received I hereby guarantee the payment of the rent and the performance of the covenants by the party of the second part in the within lease covenanted and agreed in manner and form as in said lease provided.   Witness my hand and seal this 20th day of March, A. D. 1893.
                                  JAMES E. McELROY.   [SEAL] "

James E. McElroy, the said guarantor, died June 13, 1894.   A claim against his estate for the amount alleged to be due on the lease was disallowed by the Probate Court of Cook County.   An appeal was prosecuted to the Circuit Court, an amended claim filed, and judgment rendered on a verdict in favor of defendant in error.   Plaintiff in error now seeks to reverse the judgment.

HECKMAN, ELSDON & SHAW, attorneys for plaintiff in error.

C. E. & G. D. ANTHONY, attorneys for defendant in error.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Counsel for plaintiff in error (hereinafter referred to as the guarantor) assert in the first place that inasmuch as the personal property assigned by the lessee to the lessor as security for rent was not removed from the leased premises by defendant in error, " the taking possession of the same by the landlord in order to retain possession of his lien upon the personal property, and exercising, as he did, acts of ownership over the premises and property, was such a change in the contract relations between the lessor and the lessee, as discharged the guarantor, and constituted in law a surrender;" and that " if the defendant in error took and retained possession of the premises or any portion thereof by agreement of the lessee during the term, there was a surrender in law."

The guarantor introduced no evidence, and the testimony in behalf of defendant in error (hereinafter called lessor or landlord) is uncontradicted. It must be accepted for what it tends to prove. The facts being undisputed, was there anything done by the lessor which justifies the guarantor's claim that he, the landlord, took possession of the demised premises or exercised acts of ownership thereon during the term?

It appears that when the assignment of November 30, 1894, conveying the personal property then on the demised premises as security for the rent, was executed and delivered to the landlord, the latter requested the tenant, as symbolic of the transfer, to deliver one of the keys of the premises, and this was done. The intention in so doing was, the witness states, " to rather fix my security for the lien; we supposed it would increase the value of the lien." He states, however, that he " took no possession at all of the building at that time," never went into it before the appointment of the receiver, and " never used the key." In this he is in no way contradicted. The statement of plaintiff's attorneys that " Brooke immediately took possession of the personal property by taking possession

of the leased premises," is not warranted by the evidence, unless the acceptance of the key as symbolic of the delivery of the personal property can be construed as a delivery and surrender of the possession of the leased premises and an acceptance of the same by the landlord.    The general rule is that " when the keys of a warehouse are delivered to a purchaser of goods locked up there, with a view of effecting a delivery of such goods, the delivery is complete."    Bouvier's Law Dic., title " Key."    It would not be contended, however, we imagine, that the delivery of one of several keys for such a purpose constituted a delivery of the warehouse itself.    The delivery of a key under such circumstances and with such intention is regarded as a symbolic delivery of the goods.    Where goods are ponderous and incapable of being handed over from one to another, the transfer may be made by the delivery of the key of a warehouse in which the goods are lodged, or the delivery of other *indicia* of the property.    Benj. on Sales, 6th Ed., Sec. 696; Bouvier's Law Dic., title " Symbolic Delivery," and cases there cited.

The question in the case before us is not as to the effectiveness of this symbolic delivery of the goods, but whether the delivery of the key for such a purpose and with such intention constituted a delivery of the premises containing the goods.    That such was not the intention of the parties is the undisputed testimony and is shown by their conduct.    The lessee's secretary and treasurer by whom the assignment of November 30, 1894, was executed, and who was afterward receiver for the lessee, testified that the lessee corporation had possession of the premises under the lease until he " was appointed receiver, March 16, 1895." It is evident that he so regarded the situation, for if the lessee had not continued in possession it is not probable he would have felt called upon as receiver to notify the landlord that he, as receiver, had then elected to throw up the lease and abandon the premises.    He states, it is true, that " it was pretty hard to say up to what time our company was in actual possession of those premises; they had not

been doing business there for over a year;" and again, "we paid rent several months when we did not use the building except for storage, but all the time we were trying to find a tenant for it." It is needless to say that the mere shutting up by the lessee of a building which he is not using and for which he is trying to find a sub-tenant is not by any means a surrender of rights under the lease. There is, however, evidence tending to show affirmatively that the company's employes continued to go in and out of the building from time to time, taking on and carrying off such of the personal property as they desired to use in the company's business, notwithstanding the assignment, and without objection from the lessor, thus using both the premises and the goods. The receiver states that he does not say that he "had surrendered possession;" that he is "not prepared to say just when we legally surrendered possession;" and in another connection he testifies, "When I tried to take possession of it (the assigned personal property) it was understood that the rent would be paid up to the time of the receivership." Whereas, it appears on the other hand that neither the landlord nor any agent of his entered the premises or exercised control over them after the assignment until after he had been formally notified by the receiver of his election to abandon the lease as an asset of the insolvent estate and to give up the leased premises. That it was not the intention to surrender possession of the premises by delivery of a key is further evident from the assignment itself. Why did it provide for payment of rent "hereafter accruing" on the lease, and for cancellation and surrender of the assignment whenever the past due rent should be paid up, if it was intended to give up the leased premises to the landlord at that time?

Whether the landlord did or did not obtain a valid lien on the personal property assigned to him as security for rent from and after such assignment, as against creditors or purchasers for value, we need not inquire. The statute relating to chattel mortgages was not complied with. (R. S., Chap. 95, Sec. 1.) But as between the lessor and lessee there is no reason for regarding the transfer as an idle cere-

mony in any event. It seems to have enabled the landlord subsequently to make his lien good by taking possession of the property after the abandonment of the premises by the receiver. It is enough in the present case that it clearly appears it was not the intention of either party when the key was delivered to change the status of the leased premises or to affect the terms of the lease; that the landlord did not in fact enter or assume control over the leased premises or do anything indicative of an intention so to do; to which may be added that the lessee continued to use and even to dispose of some of the assigned personal property without objection by the landlord, the assignee thereof, and continued to make such use as it desired of the premises, entering and re-entering as before the assignment.

Authorities are referred to by guarantor's counsel to the effect that "surrender by operation of law results from acts which imply mutual consent to the surrender independently of the intention of the parties that their acts shall have that effect, and by way of estoppel." 2 McAdam, Landlord & Tenant, p. 1270. The same author quotes from Talbot v. Whipple, 14 Allen, 177, that "any acts which are equivalent to an agreement on the part of the tenant to abandon, and on the part of the landlord to resume possession of the demised premises, amounts to a surrender by operation of law." The acts of the parties under consideration did not "imply mutual consent" nor were they "equivalent to an agreement" to surrender the lease. They imply the contrary.

It is argued that the receiver had not in fact vacated and abandoned the premises at the time the lessor took possession, although he had notified the landlord of his election to "renounce said lease as an asset" of the lessee, and to surrender "the lease and the premises therein described." It is said he was still in possession because the property assigned to the landlord as security remained on the premises. It is apparent, however, that the lessee's officers knew that it had no right to remove this property without payment of the over-due rent, and it was abandoned for

that reason. It had been transferred to the landlord as security, he was entitled to have possession of it, and both parties acted accordingly. The receiver and former secretary and treasurer of the lessee testifies, " I didn't try to take it out on account of this assignment, but it was put in the hands of the court, and the court decided that Mr. Brooke could hold it."

After notice of the abandonment of the premises by the receiver, the lessor undertook to relet in accordance with the seventh clause of the lease. He had notified the receiver in writing that he would not consent to a surrender, but as the lessee had "abandoned and vacated said premises" he would try to relet them, but should hold the lessee, the receiver and the guarantor liable "under the terms of the lease." Complaint is made that to protect his lien the lessor afterward put a padlock on the barn, which then contained the personal property held by him as security for rent. In what way the rights of the lessee or the guarantor were thereby affected we are not advised. The tenant and the receiver having abandoned and vacated the premises, we discover no reason why the lessor was obliged to leave the doors unfastened and the property unprotected, or to allow the receiver to carry off for creditors the goods upon which the landlord's lien was unsatisfied.

It is urged that the surrender of the lease and premises by the receiver did not constitute an abandonment of the premises, under the seventh clause of the lease, by the company. It is said that the receiver did not represent the company, but was an officer of the court. (Citing Heffron v. Gage, 149 Ill. 182–193.) It appears, however, that the order appointing the receiver in the case at bar directed him to take possession of all assets, and "the defendant company and each and all of its officers, agents and employes are hereby required and directed to make such transfer, and to execute, acknowledge and deliver all such papers as may be called for by the receiver as may be deemed necessary to place the said receiver in full possession and control of said property." The receiver in the

case before us was not "a mere custodian pending litigation" as in the case of Heffron v. Gage, referred to. The lease was an asset, and the right to it as such asset passed to the receiver by the order of court, directing the execution of such papers as might be necessary to give him full possession and control. There was, therefore, a "transfer by operation of law of the interest in the premises acquired under the lease." It is to be presumed that an assignment of the lease and other property was made to the receiver in obedience to the order. The receiver acted accordingly, and treating the lease as an asset of which he had control, he formally elected "to renounce said lease as an asset of the said Waukesha Hygeia Mineral Springs Co., and elects to surrender said premises  *   *   *  therein described." If there was such an assignment made in obedience to the order of court, then there certainly was, in this case, "upon the execution of the assignment, an abandonment of the premises by the lessee." (See Smith v. Goodman, 149 Ill. 75–85.) In any event we are of opinion that there was such an abandonment by the lessee, as was contemplated by the lease, when by operation of law under the order of court referred to, the right of possession and control of the leased premises and the lease itself passed to the receiver, in accordance with that order directing an assignment to him, and that under the seventh clause of the lease the lessor might at once, upon the refusal of the receiver to retain the lease as an asset, relet the premises for the term and charge the lessee with the deficiency, as was done. The parties covenanted that such an abandonment and vacation should not work a release of the lessee from the obligation to pay the stipulated rent for the rest of the term. "This was a contract which violated no principle of law, and which the parties were clearly competent to make, and no reason is apparent why it should not be enforced." Heims Brewing Co. v. Flannery, 137 Ill. 309–318.

It is contended that in this proceeding there was no liability on the part of the guarantor for installments of

rent becoming due after filing the original claim in the Probate Court, because, as it is claimed, as to such rent the claim is merely contingent. In considering this objection it is well to bear in mind certain dates. The terms of the lease expired April 30, 1898. The original claim was filed in the Probate Court July 15, 1896. This claim was amended December 14, 1900, to cover only the deficiency remaining on account of unpaid rent, which at that time was exactly ascertained and fully due. The original claim was filed under section 67, chapter 3, R. S., entitled "Administration of Estates," which authorizes a creditor whose debt is not due to present his claim for allowance and settlement, against an estate. It has been held that this applies only to unconditional contracts for payment of money. Robison v. Harrington, 61 Ill. App. 543–545 (but see Miskimen v. Culbertson, 162 Ill. 236, involving the same facts). See also Dunnigan v. Stevens, 122 Ill. 396, in which the indorsee of notes not then due was allowed to file his claim thereon against the estate of the indorser. Attention is called to provisions of the lease in controversy which it is said render the claim for rent not due merely contingent, viz., the clause which in case of default by the lessee permits the lessor to declare the term ended, and a clause which provides that in case of destruction of the premises by fire the term created by the lease shall cease and determine. The contract of the lessee, however, is unconditional to pay the rent for the whole term. The fact that upon certain contingencies the term might be shortened does not relieve the lessee from his promise so to pay. If a party enters into a contract with another, the performance of which would not be possible by any one except himself, the fact that the contingency of his death would render performance impossible would not make the contract conditional. In the case of Miskimen v. Culbertson, *supra*, the Appellate Court had held that a contract which provided that a failure to make any one of the monthly payments at the time due would, at the option of the payee, work a forfeiture, was not a conditional contract;·

Estate of James E. McElroy v. Brooke.

but the Supreme Court held that if the right in that case rested solely on section 67, chapter 3 of the statute, *supra*, and there was no other statute bearing on that question, "we would have no hesitation in holding that he was entitled to have his claim allowed against the estate." In the case before us, there is no other statute bearing on the question we are considering. In Dunnigan v. Stevens, *supra*, it is said: "We think the indorser here undertook that these notes should be paid at maturity; that there was a binding obligation on his part for their payment; that there was no condition or contingency as to the obligation itself, but that it was absolute and positive, and constituted a claim against the estate of the indorser," and "that it was properly filed as such against the estate." So in the present case there was no condition or contingency as to the obligation itself. The premises had been vacated and abandoned by the lessee before the original claim against the estate was filed, and the judgment now complained of was not rendered until after the term of the lease was ended, and there was no uncertainty as to the amount to be paid under the lease. It was rendered upon the amended claim, which was reduced by credits obtained from reletting the premises for the unexpired term after the vacation and abandonment by the lessee, so that it was less than the amount of the original claim.

We deem it unnecessary to extend this opinion to discuss in detail objections which, although not specifically considered, are practically disposed of by what we have said. Finding no reversible error in the record, the judgment of the Circuit Court must be affirmed.

Mr. Presiding Justice WATERMAN took no part.